KYLE P. PACKER ET AL. *v.* BOARD OF EDUCATION
OF THE TOWN OF THOMASTON
(SC 15862)

Callahan, C. J., and Berdon, Norcott, Katz, Palmer, McDonald and Peters, Js.

Argued March 26—officially released August 4, 1998

*George J. Kelly, Jr.*, with whom was *Dana Shaw MacKinnon*, for the appellant (defendant).

*William A. Conti*, with whom was *James A. Zeller* and, on the brief, *Steven H. Levy*, for the appellees (plaintiffs).

*Richard Blumenthal*, attorney general, with whom were *Seth R. Klein*, assistant attorney general, and, on the brief, *Bernard F. McGovern, Jr.*, assistant attorney general, for the attorney general as amicus curiae.

*Ann M. Parrent* and *Katerina M. Rohner* filed a brief for the Connecticut Civil Liberties Union Foundation as amicus curiae.

*Patrice McCarthy* and *Joan Libby* filed a brief for the Connecticut Association of Boards of Education as amicus curiae.

*Opinion*

CALLAHAN, C. J. The dispositive issue in this interlocutory appeal is whether the defendant, the board of education of the town of Thomaston, acted lawfully when it expelled the named plaintiff, Kyle P. Packer,[1] from Thomaston High School for possession of marijuana off the school grounds after school hours.

The following facts and procedural history are uncontroverted. The plaintiff is a senior at Thomaston High School. On September 24, 1997, a Connecticut state

---

[1] Kyle P. Packer, a minor, brought this action by and through his mother and next friend, Jane Packer. Within this opinion, we refer to the named plaintiff as the plaintiff.

trooper stopped the plaintiff's car as the plaintiff, who was not wearing a seat belt, drove through the town of Morris. At the stop, the trooper observed a marijuana cigarette in the ashtray of the plaintiff's car. A subsequent search of the vehicle revealed drug paraphernalia and approximately two ounces of marijuana hidden in the trunk of the car.[2] The plaintiff was arrested and charged with possession of marijuana and possession of drug paraphernalia.[3]

Pursuant to General Statutes § 10-233h,[4] the plaintiff's arrest was reported to the superintendent of the Thomaston school system. School administrators investigated the circumstances of the arrest and, after meeting with the plaintiff and his parents, recommended to the defendant that the plaintiff be expelled[5] from school for the remainder of the then current semester and that he be excluded from extracurricular activities for the remainder of the school year.

On October 8, 1997, after providing the plaintiff with appropriate notice, the defendant held a hearing pursuant to General Statutes § 10-233d (a) (3).[6] The plaintiff

---

[2] The plaintiff does not dispute the lawfulness of the stop and the subsequent search of his vehicle.

[3] Within this opinion, we refer to the events that resulted in the plaintiff's arrest as the incident.

[4] General Statutes § 10-233h provides in relevant part: "If any person who is at least seven years of age but less than twenty-one years of age and an enrolled student is arrested during the school year for a class A misdemeanor or a felony, the municipal police department or Division of State Police within the Department of Public Safety that made such arrest shall . . . notify the superintendent of schools of the school district in which such person resides of the identity of such person and the offense or offenses for which he was arrested . . . ."

[5] General Statutes § 10-233a (e) provides: " 'Expulsion' means an exclusion from school privileges for more than ten consecutive school days and shall be deemed to include, but not be limited to, exclusion from the school to which such pupil was assigned at the time such disciplinary action was taken, provided such exclusion shall not extend beyond a period of one calendar year."

[6] General Statutes § 10-233d (a) (3) provides: "Unless an emergency exists, no pupil shall be expelled without a formal hearing held pursuant to sections

attended the hearing and was represented by counsel. At the hearing, Robin Willink, the principal of Thomaston High School, testified that the incident had disrupted the educational process in the following ways: (1) the plaintiff's younger brother, also a student at Thomaston High School, was present when the plaintiff was arrested, causing students in the brother's class at the school to become aware of the incident; (2) a former student at Thomaston High School, who was known to have been involved in the past with distributing drugs, also was present when the plaintiff was arrested; and (3) teachers had approached Willink expressing concern over the plaintiff's arrest and asking what action would be taken in response to the incident.[7] Willink also stated that, at the beginning of the school year, the school administration had informed the student body that students would be held accountable for out-of-school conduct that "has some impact on what happens [in school]," and that "the whole tone [the school] set . . . [would be] made a sham of" if the school did not hold the plaintiff accountable for violation of the administration policy against illegal drug use. There

---

4-176e to 4-180a, inclusive, and section 4-181a, provided whenever such pupil is a minor, the notice required by section 4-177 and section 4-180 shall also be given to the parents or guardian of the pupil. If an emergency exists, such hearing shall be held as soon after the expulsion as possible."

[7] Willink also testified that the plaintiff reportedly had been involved in incidents related to alcohol and drugs. The incidents were rumored to have taken place prior to recent soccer practices, and there had been "innuendos" that during the prior school year, the plaintiff had been benched by the basketball coach in connection with substance abuse. The defendant, however, did not make findings of fact regarding those allegations.

Section 10-233d (a) (3) provides in relevant part: "Unless an emergency exists, no pupil shall be expelled without a formal hearing held pursuant to sections 4-176e to 4-180a . . . ." Because the defendant was required, pursuant to General Statutes § 4-180, to include in the record all findings of fact necessary to its determination to expel the plaintiff, we conclude that the defendant's determination that the plaintiff had engaged in conduct "seriously disruptive of the educational process" was based entirely on the defendant's findings of fact, and not on the allegations to which Willink referred.

was no other evidence that the day-to-day operation of the school had been affected by the incident.

At the close of testimony, the defendant made the following findings of fact: (1) the plaintiff was a senior at Thomaston High School; (2) the plaintiff was seventeen years old; (3) the plaintiff had possessed marijuana off the school grounds; (4) the plaintiff had possessed two ounces of marijuana off the school grounds; (5) the defendant had a policy against possession of illegal drugs; (6) the plaintiff's conduct off the school grounds had violated the defendant's policy against possession of illegal drugs; and (7) the plaintiff's conduct off the school grounds seriously had disrupted the educational process at Thomaston High School. On the basis of those findings of fact, the defendant voted, pursuant to § 10-233d (a) (1),[8] to expel the plaintiff from school for the remainder of the first semester of the school year and to prohibit him from participating in extracurricular activities, except for graduation, for the remainder of the school year.[9]

The plaintiff subsequently brought this action[10] against the defendant in the Superior Court, seeking

[8] General Statutes § 10-233d (a) (1) provides: "Any local or regional board of education, at a meeting at which three or more members of such board are present, or the impartial hearing board established pursuant to subsection (b) of this section, may expel, subject to the provisions of this subsection, any pupil whose conduct on school grounds or at a school-sponsored activity is violative of a publicized policy of such board or is seriously disruptive of the educational process or endangers persons or property or whose conduct off school grounds is violative of such policy and is seriously disruptive of the educational process, provided a majority of the board members sitting in the expulsion hearing vote to expel and that at least three affirmative votes for expulsion are cast."

[9] The defendant also directed the school administration to offer the plaintiff an alternative educational opportunity for the period of his expulsion; see General Statutes § 10-233d (d); and to record the expulsion in the plaintiff's record, to be expunged upon his graduation. See General Statutes § 10-233d (f).

[10] Subsequent to this court's decision in *Murphy* v. *Board of Education*, 167 Conn. 368, 374, 355 A.2d 265 (1974), that, with respect to adjudicative

orders restraining and enjoining the defendant from expelling him and seeking damages. Specifically, the plaintiff claimed that: (1) the defendant lacked authority to expel the plaintiff and to prohibit his participation in extracurricular activities because § 10-233d (a) (1) is unconstitutionally vague; (2) the defendant's actions in expelling the plaintiff violated the plaintiff's rights, under the United States and Connecticut constitutions, to due process and equal protection; and (3) the defendant lacked authority to expel the plaintiff because the defendant did not have a publicized policy against the use of illegal drugs off school grounds, as required by § 10-233d (a) (1).

The trial court initially entered an ex parte order temporarily restraining the defendant from expelling the plaintiff, and subsequently, after a hearing, the court concluded that the defendant lacked authority to expel the plaintiff because § 10-233d (a) (1) is unconstitutionally vague. The trial court also concluded that the plaintiff's expulsion violated his rights, under the United

proceedings, a town board of education was an "agency" within the meaning of the Uniform Administrative Procedure Act; see General Statutes § 4-166 et seq.; the legislature amended the definition of agency contained in § 4-166 (1) to exclude town boards of education. See Public Acts 1975, No. 75-529, § 2. Boards of education consequently are excluded from the jurisdiction of the Uniform Administrative Procedure Act; *Neyland* v. *Board of Education*, 195 Conn. 174, 178, 487 A.2d 181 (1985); *Delagorges* v. *Board of Education*, 176 Conn. 630, 634, 410 A.2d 461 (1979); *Mauriello* v. *Board of Education*, 176 Conn. 466, 469, 408 A.2d 247 (1979).

Because an appeal may be taken from a decision of an administrative agency only when a statute provides authority for judicial intervention; *Delagorges* v. *Board of Education*, supra, 176 Conn. 634; *Norwich Land Co.* v. *Public Utilities Commission*, 170 Conn. 1, 6, 363 A.2d 1386 (1975); the Superior Court lacks subject matter jurisdiction over appeals from decisions of town boards of education unless the legislature otherwise specifically has provided for judicial review. *Neyland* v. *Board of Education*, supra, 195 Conn. 178. Section 10-233d does not provide for such judicial review, and, consequently, the plaintiff's claims regarding his expulsion were not before the trial court on administrative appeal from the decision of the defendant expelling the plaintiff. Instead, those claims were brought against the defendant by way of a separate action for injunctive relief and damages.

States and Connecticut constitutions, to procedural due process because the plaintiff had been denied his right, at the expulsion hearing pursuant to § 10-233d (a) (3), to meaningful cross-examination of the witnesses. The trial court further concluded that the plaintiff's expulsion was unlawful because there was no evidence in the record to support the defendant's determination that the incident seriously had disrupted the educational process as required by § 10-233d (a) (1).[11] The court consequently issued an order temporarily enjoining the defendant from enforcing the plaintiff's expulsion.

The plaintiff subsequently filed a motion for clarification as to whether the trial court's order enjoining the defendant from expelling him also enjoined the defendant from excluding him from extracurricular activities for the remainder of the school year. After a hearing, the trial court granted the plaintiff's motion for clarification and issued a memorandum stating that its order granting the plaintiff's application for a temporary injunction required the defendant to restore full rights and privileges, including participation in extracurricular activities, to the plaintiff.

Despite the absence of a final judgment; see General Statutes §§ 52-263 and 51-197a (a); see also Practice Book § 4000, now § 61-1; the defendant sought a direct appeal to the Supreme Court, pursuant to General Statutes § 52-265a[12] and Practice Book § 4180, now § 83-4, from the trial court's order granting the plaintiff's

[11] The trial court did not address the plaintiff's claim that the defendant lacked authority to expel the plaintiff because the defendant did not have a publicized policy against the use of illegal drugs off school grounds, as required by § 10-233d (a) (1).

[12] General Statutes § 52-265a (a) provides in relevant part: "[A]ny party to an action who is aggrieved by an order or decision of the Superior Court in an action which involves a matter of substantial public interest and in which delay may work a substantial injustice, may appeal under this section from the order or decision to the Supreme Court within two weeks from

application for a temporary injunction. "Section 52-265a allows the chief justice to certify a direct appeal to the Supreme Court from an interlocutory order of the Superior Court on an issue of law that involves a matter of substantial public interest and in which delay may work a substantial injustice." (Internal quotation marks omitted.) *Hall* v. *Gilbert & Bennett Mfg. Co.*, 241 Conn. 282, 298, 695 A.2d 1051 (1997). Justice Borden, acting in place of the Chief Justice, who was unavailable, granted certification to appeal. Thereafter, the defendant appealed from the order of the trial court granting the plaintiff's application for a temporary injunction.

On appeal, the defendant claims, inter alia, that the trial court improperly concluded that the defendant lacked authority to expel the plaintiff for the incident because the statute pursuant to which the defendant acted is unconstitutionally vague.[13] Specifically, the defendant maintains that § 10-233d (a) (1) is not unconstitutionally vague, either as applied to the facts of this case or on its face.[14] We are not persuaded that the

the date of the issuance of the order or decision. The appeal shall state the question of law on which it is based."

[13] The defendant also claims that the trial court: (1) improperly concluded that because the plaintiff had been denied his right to meaningful cross-examination of the witnesses at his expulsion hearing and because there was no evidence in the record that the incident had been seriously disruptive of the educational process, the plaintiff's expulsion was violative of the plaintiff's rights, under the United States and Connecticut constitutions, to procedural and substantive due process; and (2) improperly ordered the defendant to permit the plaintiff to participate in extracurricular activities. Because our conclusion, later in this opinion, that § 10-233d (a) (1) cannot be applied constitutionally to the facts of the plaintiff's case is dispositive of the plaintiff's application for an order enjoining the defendant from expelling him from school and excluding him from extracurricular activities, we do not consider the defendant's additional claims. We express no opinion, however, as to the possible existence of an alternate basis, independent from § 10-233d (a) (1), for excluding the plaintiff from extracurricular activities for the remainder of the school year.

[14] "A facial challenge, in this context, means a claim that the law is invalid in toto—and therefore incapable of any valid application." (Internal quotation

statute is facially infirm, but agree that it is unconstitutionally vague as applied to the facts of this case.

We begin by noting that we ordinarily "eschew unnecessary determinations of constitutional questions"; (internal quotation marks omitted) *Stamford Hospital* v. *Vega*, 236 Conn. 646, 663, 674 A.2d 821 (1996); *DeBeradinis* v. *Zoning Commission*, 228 Conn. 187, 195, 635 A.2d 1220 (1994); *McConnell* v. *Beverly Enterprises-Connecticut, Inc.*, 209 Conn. 692, 706, 553 A.2d 596 (1989); and that we generally have declined to engage in constitutional analysis when we have been able to decide a case either on the basis of an established common-law principle or in reliance on a statutory provision. *Binette* v. *Sabo*, 244 Conn. 23, 51, 710 A.2d 688 (1998). In this case, however, the trial court's conclusion that the school expulsion statute is incapable of having any constitutionally valid application has raised "a matter of substantial public interest . . . in which delay may work a substantial injustice." See General Statutes § 52-265a. Consequently, we consider it appropriate to confront the constitutional issue raised in this appeal. We, therefore, address the trial court's conclusion that § 10-233d (a) (1) is unconstitutionally vague without first considering whether there exists an alternate common-law or statutory basis for resolving the plaintiff's application for injunctive relief.

I

Our analysis begins with a brief overview of constitutional vagueness jurisprudence. The void for vagueness doctrine is a procedural due process concept that originally was derived from the guarantees of due process contained in the fifth and fourteenth amendments to the United States constitution.[15] *Seals* v. *Hickey*, 186

marks omitted.) *Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 n.5, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982).

[15] The fourteenth amendment to the United States constitution provides in relevant part: "nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ."

Conn. 337, 342, 441 A.2d 604 (1982); see *Giaccio* v. *Pennsylvania*, 382 U.S. 399, 402–403, 86 S. Ct. 518, 15 L. Ed. 2d 447 (1966); *Lanzetta* v. *New Jersey*, 306 U.S. 451, 458, 59 S. Ct. 618, 83 L. Ed. 88 (1939); *Connally* v. *General Construction Co.*, 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926); *Connecticut Building Wrecking Co.* v. *Carothers*, 218 Conn. 580, 590, 590 A.2d 447 (1991). The Connecticut constitution[16] also requires that statutes with penal consequences provide sufficient notice to citizens to apprise them of what conduct is prohibited. See *State* v. *Coleman*, 96 Conn. 190, 195–98, 113 A. 385 (1921). We have equated vagueness analysis under our state constitution with the corresponding federal constitutional analysis. See *State* v. *Webb*, 238 Conn. 389, 533, 680 A.2d 147 (1996); *State* v. *DeFrancesco*, 235 Conn. 426, 443, 668 A.2d 348 (1995); *State* v. *Linares*, 232 Conn. 345, 376–77, 655 A.2d 737 (1995); *Bishop* v. *Kelly*, 206 Conn. 608, 611, 539 A.2d 108 (1988); *State* v. *White*, 204 Conn. 410, 414 n.1, 528 A.2d 811 (1987); *State* v. *Proto*, 203 Conn. 682, 696, 526 A.2d 1297 (1987); *State* v. *Eason*, 192 Conn. 37, 45 n.9, 470 A.2d 688 (1984), overruled in part, *Paulsen* v. *Manson*, 203 Conn. 484, 525 A.2d 1315 (1987).

The vagueness doctrine is based upon two distinct but interrelated principles. First, the doctrine requires "what Justice Holmes spoke of as fair warning . . . in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear." (Internal quotation marks omitted.) *United States* v. *Lanier*, 520 U.S. 259, 265, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997); see *McBoyle* v. *United States*, 283 U.S. 25, 27, 51 S. Ct. 340, 75 L. Ed. 816 (1931); *State* v. *Payne*, 240 Conn. 766, 777, 695 A.2d 525 (1997);

---

[16] Article first, § 8, of the Connecticut constitution provides in relevant part: "No person shall . . . be deprived of life, liberty or property without due process of law . . . ."

*State* v. *Indrisano*, 228 Conn. 795, 802, 640 A.2d 986 (1994); *State* v. *Pickering*, 180 Conn. 54, 59–60, 428 A.2d 322 (1980). "[L]aws [must] give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned* v. *Rockford*, 408 U.S. 104, 108, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972); see *Roberts* v. *United States Jaycees*, 468 U.S. 609, 629, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984); *Benjamin* v. *Bailey*, 234 Conn. 455, 483, 662 A.2d 1226 (1995); *State* v. *Indrisano*, supra, 802. A law forbidding or requiring conduct in terms so vague that men of common intelligence necessarily must guess at its meaning and differ as to its application violates due process of law. *United States* v. *Lanier*, supra, 266; *Baggett* v. *Bullitt*, 377 U.S. 360, 367, 84 S. Ct. 1316, 12 L. Ed. 2d 377 (1964); *Connally* v. *General Construction Co.*, supra, 269 U.S. 391; *State* v. *DeFrancesco*, supra, 235 Conn. 443; *State* v. *Linares*, supra, 232 Conn. 354; *State* v. *Indrisano*, supra, 802.

Second, the vagueness doctrine requires that statutes establish minimum guidelines to govern their enforcement. *Kolender* v. *Lawson*, 461 U.S. 352, 357–58, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983); *Smith* v. *Goguen*, 415 U.S. 566, 574, 94 S. Ct. 1242, 39 L. Ed. 2d 605 (1974); *State* v. *Indrisano*, supra, 228 Conn. 802; *Connecticut Building Wrecking Co.* v. *Carothers*, supra, 218 Conn. 591. "[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters . . . for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned* v. *Rockford*, supra, 408 U.S. 108–109; *State* v. *Indrisano*, supra, 803. "[V]ague laws defeat the intrinsic promise of, and frustrate the essence of, a constitutional regime. We remain a government of laws, and not of men, *Marbury* v. *Madison*, 5 U.S. (1 Cranch.) 137, 163

[1803], only so long as our laws remain clear." (Internal quotation marks omitted.) *Mesquite* v. *Aladdin's Castle, Inc.*, 455 U.S. 283, 290 n.12, 102 S. Ct. 1070, 71 L. Ed. 2d 152 (1982).

"Because perfect precision is neither possible nor required, however, the [vagueness] doctrine does not mandate the invalidation of all imprecisely drafted statutes. *Rose* v. *Locke*, 423 U.S. 48, 49, 96 S. Ct. 243, 46 L. Ed. 2d 185 (1975); *Grayned* v. *Rockford*, [supra, 408 U.S. 110] ('condemned to the use of words, we can never expect mathematical certainty from our language'); see also *State* v. *Eason*, [supra, 192 Conn. 47]." *State* v. *Wilchinski*, 242 Conn. 211, 220, 700 A.2d 1 (1997). A statute is not unconstitutional merely because a person must inquire further as to the precise reach of its prohibitions, nor is it necessary that a statute list the exact conduct prohibited. *State* v. *DeFrancesco*, supra, 235 Conn. 443; *State* v. *White*, supra, 204 Conn. 415. The constitution requires no more than a reasonable degree of certainty. *Boyce Motor Lines, Inc.* v. *United States*, 342 U.S. 337, 340, 72 S. Ct. 329, 96 L. Ed. 367 (1952); *State* v. *DeFrancesco*, supra, 443–44. "While some ambiguous statutes are the result of poor draftsmanship, it is apparent that in many instances the uncertainty is merely attributable to a desire not to nullify the purpose of the legislation by the use of specific terms which would afford loopholes through which many could escape." *State* v. *Wilchinski*, supra, 220; see W. LaFave & A. Scott, Criminal Law (1972) § 11, pp. 84–85.

## II

Mindful not only of the above relevant principles, but also of the fact that "legislative enactments carry with them a strong presumption of constitutionality, and that a party challenging the constitutionality of a validly enacted statute bears the heavy burden of proving the statute unconstitutional beyond a reasonable doubt";

*State* v. *Wilchinski,* supra, 242 Conn. 217–18; *Johnson* v. *Meehan,* 225 Conn. 528, 543–44, 626 A.2d 244 (1993); *Beccia* v. *Waterbury,* 192 Conn. 127, 133, 470 A.2d 1202 (1984); we turn to the defendant's claim that the trial court improperly concluded that § 10-233d (a) (1) is unconstitutionally vague.

A

As a threshold matter, we note that the plaintiff's vagueness challenge to § 10-233d (a) (1) may succeed only if the plaintiff has a property interest in not being deprived, by expulsion, of continued participation in the regular educational program at Thomaston High School. See *Board of Education* v. *Loudermill,* 470 U.S. 532, 538–41, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985); *Perry* v. *Sindermann,* 408 U.S. 593, 599, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972); *Board of Regents* v. *Roth,* 408 U.S. 564, 576–78, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972); *Grimes* v. *Conservation Commission,* 243 Conn. 266, 271–72, 703 A.2d 101 (1997); *Hunt* v. *Prior,* 236 Conn. 421, 436, 673 A.2d 514 (1996); *Bartlett* v. *Krause,* 209 Conn. 352, 362–63, 551 A.2d 710 (1988). If the plaintiff has such a property interest, then the defendant constitutionally cannot expel him without affording him due process. *Board of Education* v. *Loudermill,* supra, 538; *Board of Regents* v. *Roth,* supra, 578; *Bartlett* v. *Krause,* supra, 363.

Property interests are more than abstract needs, desires or unilateral expectations of benefits or privileges. *Board of Regents* v. *Roth,* supra, 408 U.S. 577; *Harkless* v. *Rowe,* 232 Conn. 599, 618, 657 A.2d 562 (1995); *Double I Ltd. Partnership* v. *Plan & Zoning Commission,* 218 Conn. 65, 77, 588 A.2d 624 (1991). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement

to it." *Board of Regents* v. *Roth,* supra, 577; *Bartlett* v. *Krause,* supra, 209 Conn. 365.

A person has a legitimate claim of entitlement to a benefit "if there are 'rules or mutually explicit understandings that support his claim of entitlement to the benefit . . . .' *Perry* v. *Sindermann,* [supra, 408 U.S. 601]; see also *Bishop* v. *Wood,* 426 U.S. 341, 344, 96 S. Ct. 2074, 48 L. Ed. 2d 684 (1976); *Bartlett* v. *Krause,* [supra, 209 Conn. 362–63]; 2 R. Rotunda, J. Nowak & J. Young, Constitutional Law: Substance and Procedure (1986) § 17.5, pp. 234–36." *Connecticut Education Assn., Inc.* v. *Tirozzi,* 210 Conn. 286, 294, 554 A.2d 1065 (1989). The hallmark example of a constitutionally protected property interest is an entitlement that is grounded in state law and cannot be removed except "for cause." *Logan* v. *Zimmerman Brush Co.,* 455 U.S. 422, 430, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982); *Goss* v. *Lopez,* 419 U.S. 565, 573, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975); *Hunt* v. *Prior,* supra, 236 Conn. 437; *Clisham* v. *Board of Police Commissioners,* 223 Conn. 354, 360–61, 613 A.2d 254 (1992); *Double I Ltd. Partnership* v. *Plan & Zoning Commission,* supra, 218 Conn. 78.

The "rules or mutually explicit understandings"; see *Perry* v. *Sindermann,* supra, 408 U.S. 601; *Connecticut Education Assn., Inc.* v. *Tirozzi,* supra, 210 Conn. 294; *Bartlett* v. *Krause,* supra, 209 Conn. 362–63; under which the plaintiff claims entitlement to the benefit of continued participation in the regular educational program at Thomaston High School are found in the Connecticut constitution and the statutory scheme that governs the operation of public schools in Connecticut. The constitution of Connecticut, article eighth, § 1, provides that "[t]here shall always be free public elementary and secondary schools in the state. The general assembly shall implement this principle by appropriate legislation." This mandate of the state constitution places the ultimate responsibility for the education of

the children of Connecticut on the state. *New Haven v. State Board of Education*, 228 Conn. 699, 702–703, 638 A.2d 589 (1994); *Murphy v. Board of Education*, 167 Conn. 368, 372, 355 A.2d 265 (1974); *West Hartford Education Assn., Inc. v. DeCourcy*, 162 Conn. 566, 573, 295 A.2d 526 (1972). General Statutes § 10-220[17] delegates the state's responsibility to provide and administer public education to local and regional boards of education; *New Haven v. State Board of Education*, supra; *Waterbury Teachers Assn. v. Furlong*, 162 Conn. 390, 397, 294 A.2d 546 (1972); which, as "agencies of the state in charge of education in the town . . . possess only such powers as are granted to them by the General Statutes expressly or by necessary implication." (Internal quotation marks omitted.) *Campbell v. Board of Education*, 193 Conn. 93, 97, 475 A.2d 289 (1984); *City Council v. Hall*, 180 Conn. 243, 248, 429 A.2d 481 (1980); *Herzig v. Board of Education*, 152 Conn. 144, 150, 204 A.2d 827 (1964).

Section 10-233d (a) (1) authorizes school boards to expel students from school for conduct that occurs off school grounds. Such expulsions, however, may be imposed only if the substantive standard of "conduct . . . seriously disruptive of the educational process" has been satisfied. Therefore, § 10-233d (a) (1) permits

---

[17] General Statutes § 10-220 provides in relevant part: "(a) Each local . . . board of education shall maintain good public elementary and secondary schools, implement the educational interests of the state as defined in section 10-4a and provide such other educational activities as in its judgment will best serve the interests of the school district . . . and shall give all the children of the school district as nearly equal advantages as may be practicable; shall have charge of the schools of its respective school district . . . shall designate the schools which shall be attended by the various children within the school district; shall make such provisions as will enable each child of school age, residing in the district to attend some public day school for the period required by law . . . shall cause each child seven years of age and over and under sixteen living in the school district to attend school . . . and shall perform all acts . . . necessary to carry into effect the powers and duties imposed by law. . . ."

school boards to expel students from public school for conduct that occurs off school grounds only if the conduct is seriously disruptive of the educational process. Public school students, consequently, have a "legitimate claim of entitlement"; see *Perry* v. *Sindermann*, supra, 408 U.S. 601; *Board of Regents* v. *Roth*, supra, 408 U.S. 577; *Double I Ltd. Partnership* v. *Plan & Zoning Commission*, supra, 218 Conn. 77; not to be deprived of continued participation in the regular school program, by way of expulsion for conduct that occurs off school grounds, unless their conduct off school grounds was seriously disruptive of the educational process. We conclude, therefore, that the plaintiff had a constitutionally protected property interest in his continued participation in the regular educational program at Thomaston High School. See *Goss* v. *Lopez*, supra, 419 U.S. 573–74; see also *Logan* v. *Zimmerman Brush Co.*, supra, 455 U.S. 430; *Clisham* v. *Board of Police Commissioners*, supra, 223 Conn. 360–61; *Double I Ltd. Partnership* v. *Plan & Zoning Commission*, supra, 78. The defendant, consequently, may not expel the plaintiff for the incident unless the constitutional requirements of due process, including the principles of the void for vagueness doctrine, have been satisfied. See *Board of Education* v. *Loudermill*, supra, 470 U.S. 538; *Board of Regents* v. *Roth*, supra, 578; *Bartlett* v. *Krause*, supra, 209 Conn. 363.

## B

The trial court concluded that the plaintiff's expulsion violated his rights to due process under the United States and Connecticut constitutions because § 10-233d (a) (1) is impermissibly vague, both as applied to the facts of the plaintiff's case and on its face. The general rule is that the constitutionality of a statutory provision being attacked as void for vagueness is determined by the statute's applicability to the particular facts at issue. See *Chapman* v. *United States*, 500 U.S. 453, 467, 111

S. Ct. 1919, 114 L. Ed. 2d 524 (1991); *Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n.7, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982); *United States* v. *Powell*, 423 U.S. 87, 92–93, 96 S. Ct. 316, 46 L. Ed. 2d 228 (1975); *United States* v. *Mazurie*, 419 U.S. 544, 550, 95 S. Ct. 710, 42 L. Ed. 2d 706 (1975); *State* v. *Payne*, supra, 240 Conn. 777; *Connecticut Building Wrecking Co.* v. *Carothers*, supra, 218 Conn. 588; *State* v. *Proto*, supra, 203 Conn. 696; *State* v. *Pickering*, supra, 180 Conn. 57. "To do otherwise, absent the appearance that the statute in question intrudes upon fundamental guarantees, particularly first amendment freedoms,[18] would be to put courts in the undesirable position of considering every conceivable situation which might possibly arise in the application of [the statute]." *State* v. *Pickering*, supra, 57. Thus, outside the context of the first amendment, in order to challenge successfully the facial validity of a statute, a party is required to demonstrate as a threshold matter that the statute may not be applied constitutionally to the facts of his case. See *State* v. *Wilchinski*, supra, 242 Conn. 218 (conclusion that statute may be applied constitutionally to facts of case defeats facial vagueness claim); *Benjamin* v. *Bailey*, supra, 234 Conn. 484 (same). The plaintiff has not raised a first amendment challenge to § 10-233d (a) (1). Accordingly, we turn our attention first to the defendant's claim that the trial court improperly concluded that § 10-233d (a) (1) cannot be applied constitutionally to the facts of the plaintiff's case.

In order to challenge successfully, on due process grounds, the vagueness of the statute as applied to particular facts, a party must prove that the policies

---

[18] Due to the chilling effect that vague statutes can exert on first amendment liberties, however, when those freedoms are substantially at stake, a litigant is permitted to challenge the validity of a statute's application to hypothetical situations even though his own conduct clearly may fall within the statute's proscriptions. *State* v. *Proto*, supra, 203 Conn. 697; see *State* v. *Pickering*, supra, 180 Conn. 58 n.3.

advanced by the void for vagueness doctrine were violated in his case. Specifically, a party must show that: (1) the statute does not provide fair warning that it applies to the conduct at issue, or (2) that he was the victim of arbitrary enforcement practices. *Connecticut Building Wrecking Co.* v. *Carothers*, supra, 218 Conn. 591.[19]

The plaintiff maintains that § 10-233d (a) (1) cannot be applied constitutionally to the facts of his case because the phrase "seriously disruptive of the educational process" does not provide any meaningful indication; see *Mitchell* v. *King*, 169 Conn. 140, 145, 363 A.2d 68 (1975); that having marijuana in the trunk of a car off school grounds after school hours subjects a student to expulsion. In determining whether a statute provides constitutionally adequate warning, "we read the statute narrowly in order to save its constitutionality, rather than broadly in order to destroy it, [and we] indulge in every presumption in favor of the statute's constitutionality." *State* v. *DeFrancesco*, supra, 235 Conn. 426; *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 44, 699 A.2d 101 (1997); *Benjamin* v. *Bailey*, supra, 234 Conn. 486; *State* v. *Indrisano*, supra, 228 Conn. 805. In doing so, we refer not only to the language of the statute, but also to prior interpretations that this court and the Appellate Court have placed on the statute. See *Rose* v. *Locke*, supra, 423 U.S. 51–52; *State* v. *DeFrancesco*, supra, 444; *State* v. *Indrisano*, supra, 805; *State* v. *Pickering*, supra, 180 Conn. 63. We also may use as a guide

---

[19] The trial court concluded that § 10-233d (a) (1) does not provide constitutionally adequate notice that having marijuana in the trunk of a car off school grounds after school hours subjects a student to expulsion, and that the plaintiff had been the victim of unconstitutionally arbitrary enforcement. Because our conclusion, later in this opinion, that the plaintiff was not provided with constitutionally adequate notice is dispositive of the plaintiff's application for injunctive relief, we do not consider whether the trial court properly concluded that the defendant's actions were unconstitutionally arbitrary.

judicial opinions that refer to a statute that uses similar language. *State* v. *DeFrancesco*, supra, 444; *State* v. *Indrisano*, supra, 805–809.

With the above relevant principles in mind, we turn our attention to § 10-233d (a) (1) and the facts of the present case. Because § 10-233d (a) (1) has not been construed previously by this court or the Appellate Court, our analysis is guided by the language of the phrase "seriously disruptive of the educational process" and by prior judicial interpretations of statutes containing language similar to that of § 10-233d (a) (1). Our fundamental inquiry is whether, upon being apprised of the language of § 10-233d (a) (1) and those prior interpretations, a person of ordinary intelligence could determine, with a reasonable degree of certainty, whether the plaintiff's conduct, i.e., having marijuana in the trunk of a car in the town of Morris after school hours, would subject him to expulsion. Put another way, our task is to ascertain whether such persons necessarily would differ as to whether that conduct was "seriously disruptive of the educational process" at Thomaston High School. See *Roberts* v. *United States Jaycees*, supra, 468 U.S. 629; *Connally* v. *General Construction Co.*, supra, 269 U.S. 391; *Benjamin* v. *Bailey*, supra, 234 Conn. 483; *State* v. *Linares*, 232 Conn. 354.

We begin with the phrase "seriously disruptive of the educational process." Section 10-233d (a) (1) does not define the terms "seriously disruptive" or "educational process." If a statute does not sufficiently define a term, it is appropriate for clarification to look to the common understanding of the term as expressed in a dictionary. See General Statutes § 1-1 (a);[20] see also *Coppola* v. *Coppola*, 243 Conn. 657, 662, 707 A.2d 281 (1998); *State*

---

[20] General Statutes § 1-1 (a) provides in relevant part: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language . . . ."

v. *Wilchinski*, supra, 242 Conn. 223–24; *State* v. *Payne*, supra, 240 Conn. 771; *State* v. *Linares*, supra, 232 Conn. 358; *State* v. *Indrisano*, supra, 228 Conn. 809.

Webster's Third New International Dictionary defines "seriously" as: to a serious extent; severely. The meanings given for "severe" include: marked; of a great degree. Id. "Disruptive" is defined as "causing or tending to cause disruption." Id. The meanings given for "disrupt" include "to throw into disorder or turmoil . . . to interrupt to the extent of stopping, preventing normal continuance of, or destroying . . . . Id. "Educational" is defined as: relating to or concerned with education. Id. The meanings given for "process" include "progressively continuing operation that consists of a series of controlled actions or movements systematically directed toward a particular result or end" and "something (as in a series of actions, happenings or experiences) going on or carried on . . . ." Id. Thus, the common usage of the terms contained in the phrase "seriously disruptive of the educational process" indicates that the § 10-233d (a) (1) was intended to apply to conduct that markedly interrupts or severely impedes the operation of a school. Moreover, we previously have interpreted, for vagueness purposes, the term "disrupt" in accord with its common usage. See *State* v. *Linares*, supra, 232 Conn. 358 (disrupt means "to upset the order of," or "throw into confusion or disorder").

We conclude, therefore, that a person of ordinary intelligence, upon being apprised of the language of § 10-233d (a) (1) and our prior interpretation in *Linares* of similar language, would know, with a reasonable degree of certainty, that conduct off school grounds that markedly interrupts or severely impedes the operation of a school is "seriously disruptive of the educational process" and therefore subjects a student to expulsion. We further conclude, however, that a person of ordinary intelligence, apprised only of the language

of § 10-233d (a) (1) and our prior interpretation in *Linares* of similar language, could not be reasonably certain whether possession of marijuana in the trunk of a car, off the school grounds after school hours, is, *by itself and without some tangible nexus to school operation,* "seriously disruptive of the educational process" as required by § 10-233d (a) (1) in order to subject a student to expulsion.

The defendant nevertheless argues that the plaintiff received constitutionally adequate notice that possession of marijuana off school grounds would subject him to expulsion. Specifically, the defendant maintains that the defendant's written policy regarding misconduct off school grounds and the school administration's announcement, at the beginning of the school year, that the administration intended to hold students accountable for conduct in violation of school policy even if such conduct occurred off school grounds provided such notice. We are unpersuaded.

The defendant's written policy regarding misconduct off school grounds, which is set forth in the Thomaston High School 1997–1998 Student Handbook, provides in relevant part that "[s]tudents are subject to discipline, up to and including suspension and expulsion for misconduct which is *seriously disruptive of the educational process and* is a violation of a publicized board policy, even if such conduct occurs off-school property and during non-school time. Examples of off-school conduct that may result in such discipline include . . . [u]se, possession or distribution of illegal drugs. . . ." (Emphasis added.) Thus, the defendant's policy regarding out-of-school misconduct simply furnished students with actual notice that possession of illegal drugs *under circumstances seriously disruptive of the educational process* would subject them to expulsion.

The defendant also maintains that the plaintiff was provided with constitutionally adequate warning by virtue of the school administration's announcement, at the

beginning of the school year, that the administration intended to hold students accountable for conduct violative of school policy even if such conduct occurred off school grounds. In effect, the defendant argues that adoption of a written policy vests school officials with *complete discretion* to characterize as "seriously disruptive of the educational process" any conduct violative of such policy. In the defendant's view, therefore, a school board's discretion with respect to expulsions for conduct that takes place off school grounds is constrained only by the procedural statutory requirement that such conduct must be violative of a publicized board policy, but not by the substantive statutory requirement that the conduct also must be seriously disruptive of the educational process. See General Statutes § 10-233d (a) (1).

The defendant's argument, therefore, renders superfluous the phrase "seriously disruptive of the educational process" in § 10-233d (a) (1). "We presume [however] that the legislature had a purpose for each sentence, clause or phrase in a legislative enactment, and that it did not intend to enact meaningless provisions." (Internal quotation marks omitted.) *Ferrigno* v. *Cromwell Development Associates*, 244 Conn. 189, 196, 708 A.2d 1371 (1998); *Hall* v. *Gilbert & Bennett Mfg. Co.*, supra, 241 Conn. 303; *Zichichi* v. *Middlesex Memorial Hospital*, 204 Conn. 399, 407, 528 A.2d 805 (1987). "It is a basic tenet of statutory construction that the legislature did not intend to enact meaningless provisions. . . . [C]are must be taken to effectuate all provisions of [a] statute." (Internal quotation marks omitted.) *Ferrigno* v. *Cromwell Development Associates*, supra, 196; *State* v. *Szymkiewicz*, 237 Conn. 613, 621, 678 A.2d 473 (1996); *State* v. *Spears*, 234 Conn. 78, 93, 662 A.2d 80, cert. denied, 516 U.S. 1009, 116 S. Ct. 565, 133 L. Ed. 2d 490 (1995).[21]

---

[21] The defendant's argument is also self-defeating. Under the defendant's construction of § 10-233d (a) (1), school boards would have complete discre-

We conclude, therefore, that § 10-233d (a) (1) does not vest school boards with discretion to characterize conduct that occurs off school grounds as "seriously disruptive of the educational process" solely because the conduct is violative of school policy. In order to subject a student to expulsion, conduct off school grounds must not only violate school policy, it must also be "seriously disruptive of the educational process" for reasons other than the fact that it violated school policy.

Because § 10-233d (a) (1) does not authorize school boards to define, by way of adoption of a policy, the meaning of the phrase "seriously disruptive of the educational process," the defendant's announcement that it intended to expel students whose conduct off school grounds violated school policy served only to provide students with actual notice of the defendant's opinion that such conduct is "seriously disruptive of the educational process." The defendant's opinion of the meaning of the phrase "seriously disruptive of the educational process," however, is irrelevant not only to the meaning that the legislature intended that phrase to have, but also to the question of whether § 10-233d (a) (1) provided the plaintiff with constitutionally adequate notice

tion to determine the meaning of the phrase "seriously disruptive of the educational process." Section 10-233d (a) (1), therefore, would not satisfy the second requirement of the vagueness doctrine that statutes establish minimum guidelines to govern their enforcement. See *Kolender* v. *Lawson*, supra, 461 U.S. 357–58; *Smith* v. *Goguen*, supra, 415 U.S. 574; *State* v. *Indrisano*, supra, 228 Conn. 802; *Connecticut Building Wrecking Co.* v. *Carothers*, supra, 218 Conn. 591. The defendant implicitly concedes the problem with its argument: relying on this court's decision in *Bottone* v. *Westport*, 209 Conn. 652, 659, 553 A.2d 576 (1989), the defendant maintains that the due process requirement of minimally adequate guidelines does not apply to legislative delegations of authority to local school boards, and that, consequently, fair notice was all that was required in order for the plaintiff's expulsion to pass muster under the void for vagueness doctrine. *Bottone*, however, pertained to legislative delegation of rule-making authority to municipalities, not to legislative delegation of adjudicative authority to school boards.

that the incident would subject him to expulsion. Such notice must come from the language of the statute and from relevant judicial interpretations, not from opinions expressed by persons not authorized to construe the statute.

We conclude, therefore, that the plaintiff was not provided constitutionally adequate notice that the incident would subject him to expulsion from school. Section 10-233d (a) (1), consequently, cannot be applied constitutionally to the facts of his case.

C

The general rule is that, as a threshold matter, the constitutionality of a statute is tested in light of the particular facts at issue. See *State* v. *Wilchinski*, supra, 242 Conn. 218 (conclusion that statute may be applied constitutionally to facts of case defeats facial vagueness claim); *Benjamin* v. *Bailey*, supra, 234 Conn. 484 (same). Because we have concluded, however, that § 10-233d (a) (1) cannot be applied constitutionally to the plaintiff's conduct, it is necessary to look beyond the facts of this case in order to resolve the defendant's claim that the trial court improperly concluded that § 10-233d (a) (1) is unconstitutionally vague on its face.

"The strong presumptive validity that attaches to [a statute] has led [the United States Supreme Court] to hold many times that statutes are not automatically invalidated as [facially] vague simply because difficulty is found in determining whether certain marginal offenses fall within their language." *Parker* v. *Levy*, 417 U.S. 733, 757, 94 S. Ct. 2547, 41 L. Ed. 2d 439 (1974); see, e.g., *Jordan* v. *De George*, 341 U.S. 223, 231, 71 S. Ct. 703, 95 L. Ed. 886 (1951). The degree of specificity that due process requires of civil statutes is less than that demanded of criminal statutes. *Bottone* v. *Westport*, 209 Conn. 652, 658, 553 A.2d 576 (1989); *Seals* v. *Hickey*,

supra, 186 Conn. 343. Statutes addressing school discipline, in particular, need not be as detailed as a criminal code. *Bethel School District No. 403* v. *Fraser,* 478 U.S. 675, 686, 106 S. Ct. 3159, 92 L. Ed. 2d 549 (1986) ("[schools] need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process"); *Mitchell* v. *King,* supra, 169 Conn. 144 ("[t]his court is mindful of . . . the need for flexibility and reasonable breadth in statutes which guide [school officials] in their duties and which authorize them to accomplish educational ends").

Moreover, "[i]n a facial vagueness challenge, we . . . examine the challenged statute to see if it is impermissibly vague in all of its applications. A statute that is impermissibly vague in all its applications is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. . . . Such a provision simply has *no core.*" (Internal quotation marks omitted.) *State* v. *Dyson,* 238 Conn. 784, 797, 680 A.2d 1306 (1996); see *Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.,* supra, 455 U.S. 495 n.7; *Smith* v. *Goguen,* supra, 415 U.S. 578; *Benjamin* v. *Bailey,* supra, 234 Conn. 484; *State* v. *Indrisano,* supra, 228 Conn. 804; see, e.g., *Kolender* v. *Lawson,* supra, 461 U.S. 360 (determination whether identification is "credible and reliable" is entirely within individual police officer's subjective discretion); *Coates* v. *Cincinnati,* 402 U.S. 611, 614, 91 S. Ct. 1686, 29 L. Ed. 2d 214 (1971) (term "manner annoying to persons passing by" does not provide objective standard of conduct); *Mitchell* v. *King,* supra, 169 Conn. 144–45 (determination whether conduct is "inimical to the best interests of the school" is entirely within subjective discretion of school board).

Finally, we may add interpretive gloss to a challenged statute in order to render it constitutional. *State* v. *Indrisano*, supra, 228 Conn. 805–806. In construing the statute, however, we must search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent. Id.; *Calfee* v. *Usman*, 224 Conn. 29, 33, 616 A.2d 250 (1992).

Our analysis of the core meaning, or lack thereof, of the phrase "seriously disruptive of the educational process," is guided, therefore, by "well established principles of statutory construction designed to further our fundamental objective of ascertaining and giving effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . ." (Internal quotation marks omitted.) *Simmons* v. *Simmons*, 244 Conn. 158, 164, 708 A.2d 949 (1998).

Having concluded, earlier in this opinion, that the common understanding of the language of the phrase "conduct . . . seriously disruptive of the educational process" indicates that § 10-233d (a) (1) was intended by the legislature to apply to conduct that markedly interrupts or severely impedes the operation of a school, at this point, we turn our attention to the legislative history of § 10-233d (a) (1) to seek additional evidence of legislative intent.

The legislative genealogy of § 10-233d is instructive. Subsequent to this court's declaration in 1975 that General Statutes (Rev. to 1975) §10-234, the then current school expulsion statute, was void for vagueness; see *Mitchell* v. *King*, supra, 169 Conn. 140; the legislature repealed § 10-234 and enacted § 10-233d in its stead.

See General Statutes (Rev. to 1977) § 10-233d; Public Acts 1975, No. 75-609, § 4. As originally enacted, Public Act 75-609, § 4, which was codified as § 10-233d (a), provided in relevant part that "[t]he board of education . . . may expel any pupil whose conduct endangers persons or property or is *seriously disruptive of the educational process,* or is violative of a publicized policy of such board. . . ." (Emphasis added.) [22] The legislative history of House Bill No. 5550 of the 1975 legislative session, which eventually was enacted as Public Act 75-609, and ultimately was codified as § 10-233d, does not explicitly address the meaning of the phrase "seriously disruptive of the educational process." The legislative history of the bill does contain, however, the following statement of purpose: "To remove the permissive and vague provisions of the present statutes concerning suspension and exclusion of pupils and replace them with a clearly defined statutory scheme which affords due process to all persons involved . . . and *to guarantee a continued and uninterrupted education for those students in our school system who wish to learn.*" (Emphasis added.) Committee Bill No. 5550, 1975 Sess., Connecticut General Assembly. The statement of purpose of a bill may be considered in determining its intent. *Zichichi* v. *Middlesex Memorial Hospital,* supra, 204 Conn. 405; *Seals* v. *Hickey,* supra, 186 Conn. 345; *Miller* v. *Board of Education,* 166 Conn. 189, 194, 348 A.2d 584 (1974). Consequently, the statement of purpose contained in House Bill No. 5550 supports the conclusion that the language of § 10-233d indicates that the legislature intended that the phrase "seriously disruptive of the

---

[22] Prior to the enactment of Public Acts 1996, No. 96-244, § 10-233d (a) (1) permitted expulsion for conduct off school grounds that was seriously disruptive of the educational process *or* violative of a publicized policy. Public Act 96-244, however, amended § 10-233d (a) (1) to require that the conduct off school grounds be both seriously disruptive of the educational process *and* violative of a publicized policy.

educational process" apply to conduct that markedly interrupts or severely impedes the day-to-day operation of a school. That conclusion is similarly buttressed by remarks made by Jeannette Hotchkiss, president of the Connecticut Education Association, during the committee hearing on the bill that ultimately became Public Act 75-609. See Conn. Joint Standing Committee Hearings, Education, 1975 Sess., Pt. 2, p. 699 (legislature's task is to balance "students' [due process] rights and the rights of a class which may be disrupted [as well as the rights of an] individual who is assaulted or harassed").

Furthermore, we see nothing in the legislative history of the two subsequent relevant amendments to § 10-233d (a) to suggest that those amendments were enacted in an effort to depart from the initial legislative intent regarding the meaning of the phrase "seriously disruptive of the educational process." Public Acts 1995, No. 95-304, § 5, amended § 10-233d to provide in relevant part that "[a] board of education . . . may expel . . . any pupil whose conduct endangers persons or property or whose conduct *on or off school grounds* is seriously disruptive of the educational process, or is violative of a publicized policy of such board . . . ." (Emphasis added.) The one direct reference found in the legislative history of House Bill No. 6898 of the 1995 legislative session, which eventually was enacted as Public Act 95-304, to the addition of the language "on or off school grounds" to § 10-233d (a), however, merely provides: "[The bill] specifies that a school board may expel a student whose conduct is seriously disruptive of the educational process, even if it occurred off school grounds." Substitute House Bill No. 6898, 1995 Sess., Connecticut General Assembly (File No. 901). Although Public Acts 1996, No. 96-244, § 19, further amended § 10-233d to provide in relevant part that "[a] board of education . . . may expel . . . any pupil . . . whose conduct off school grounds *is violative of [a publicized*

*policy] and* is seriously disruptive of the educational process,"[23] the legislative history of House Bill No. 5342 of the 1996 legislative session, which eventually was enacted as Public Act 96-244, makes no mention of the phrase "seriously disruptive of the educational process."[24] We conclude, therefore, that the legislature intended the language of § 10-233d (a) (1)—"conduct . . . seriously disruptive of the educational process"— to mean conduct that markedly interrupts or severely impedes the day-to-day operation of a school.

Thus, the phrase "conduct . . . seriously disruptive of the educational process" is not completely devoid of a core meaning. Although a reasonable person may have difficulty ascertaining whether the nexus between certain conduct off school grounds and the day-to-day operation of the school is sufficient to bring that particular conduct within the purview of § 10-233d (a) (1), a student who wished to avoid expulsion could identify prohibited conduct. For example, a student who called the school from home and falsely stated that a bomb had been planted in the school reasonably could not complain that a person of ordinary intelligence could not be reasonably certain that the bomb threat would result in its likely goal—a marked interruption of the operation of the school. Similarly, a student who threatened, off school grounds, to bring a knife to school and

---

[23] See footnote 22 of this opinion.

[24] We note, moreover, that our conclusion that the phrase "conduct . . . seriously disruptive of the educational process" was intended to apply to conduct that markedly interrupts or severely impedes the day-to-day operation of a school is not inconsistent with a reference made in the legislative history of House Bill No. 6898, which eventually was enacted as Public Act 95-304, to the overall purpose of that bill. During a discussion of House Bill No. 6898 on the floor of the House of Representatives, Representative Kosta Diamantis remarked that the bill "was certainly a bipartisan effort . . . to further enhance the safety in the schools. . . . The issue was protecting our schools. . . . We believe this is . . . one of the most comprehensive and safest pieces of legislation *to protect children in our school systems.*" (Emphasis added.) 38 H.R. Proc., Pt. 14, 1995 Sess., p. 5108.

kill another student or a teacher reasonably could not maintain that a person of ordinary intelligence could not be reasonably confident that such a threat would markedly impede the normal school activities of the intended victim and school officials. This is a case, then, of the type adverted to in *Smith* v. *Goguen,* supra, 415 U.S. 578, in which the statute "by [its] terms . . . appl[ies] without question to certain activities, but whose application to other behavior is uncertain." Id. ; see also *Parker* v. *Levy,* supra, 417 U.S. 755–56. We conclude therefore that § 10-233d (a) (1) has a core meaning of sufficient clarity to permit the statute to withstand a facial vagueness attack.

To summarize, we conclude that: (1) § 10-233d (a) (1) cannot be applied constitutionally to the facts of the present case because the statute, as drafted, did not provide the plaintiff with constitutionally adequate notice that possession of two ounces of marijuana in the trunk of his car off the school grounds in the town of Morris, after school hours, without any tangible nexus to the operation of Thomaston High School, would subject him to expulsion; (2) the legislature intended the phrase "seriously disruptive of the educational process" in § 10-233d (a) (1) to mean conduct that markedly interrupts or severely impedes the day-to-day operation of a school; and (3) § 10-233d (a) (1) possesses a core meaning of sufficient clarity to allow the statute to surmount a facial vagueness attack.

We do not mean to pin any medals on the plaintiff or condone his destructive conduct in any way.[25] Moreover, we recognize that he probably is a thorn in the

[25] Nor do we mean to suggest that there is no set of circumstances under which possession of illegal drugs off school grounds would markedly interrupt or severely impede the day-to-day operation of a school and, therefore, constitute behavior that is "seriously disruptive of the educational process" as required by § 10-233d (a) (1).

side of the administration and that his conduct poses an all too familiar, and difficult, problem for school administrators. The school expulsion statute, as applied to this set of facts, however, is simply too vague to be constitutionally enforceable.[26]

The order of the trial court granting the plaintiff's application for a temporary injunction is affirmed insofar as the order enjoins the defendant from expelling the plaintiff from school and excluding him from extracurricular activities; the order is reversed insofar as it concludes that § 10-233d (a) (1) is facially unconstitutional and the case is remanded for further proceedings consistent with this opinion.

In this opinion NORCOTT, KATZ and PETERS, Js., concurred.

BERDON, J., concurring in the result. I agree with Justice Palmer's concurring opinion that we should sustain the judgment of the trial court on the ground that the defendant, the board of education of the town of Thomaston, "failed to prove that the [named] plaintiff's drug possession was such as to markedly [interrupt]

---

[26] In his concurring opinion, Justice Berdon opines that the question of whether § 10-233d is unconstitutionally vague has been mooted by Public Acts 1998, No. 98-139. Although we agree with Justice Berdon that the issue of whether possession of illegal drugs off school grounds is capable of constituting conduct "seriously disruptive of the educational process" within the meaning of § 10-233d, as amended by Public Act 98-139, properly is left for another day; see footnote 25 of this opinion; that enactment does not preclude, as Justice Berdon suggests, the rendering of any practical relief in this case. The statute under which the plaintiff seeks relief is § 10-233d, rather than § 10-233d, as amended by Public Act 98-139. Moreover, we recognize that the plaintiff may have graduated from Thomaston High School and therefore may no longer be subject to expulsion from that school. In addition to his claim for injunctive relief, however, the plaintiff has brought a claim for damages. Consequently, we do not agree that the plaintiff's claims have become moot. See Loisel v. Rowe, 233 Conn. 370, 378, 660 A.2d 323 (1995).

or severely [impede] the day-to-day operation of [the] school, the standard that must be met to justify expulsion for off-campus conduct under the seriously disruptive of the educational process requirement of [General Statutes] § 10-233d (a) (1)." (Internal quotation marks omitted.) I also agree with Justice Palmer that we should not reach the issue of whether § 10-233d is constitutional as applied to this case. For the following reasons, however, I would also not reach the issue of whether § 10-233d is constitutional on its face.

First, whether § 10-233d is constitutional, facially or as applied, is a moot issue with respect to this case. After the trial court rendered its decision in this case, the legislature recognized that § 10-233d was constitutionally infirm. On June 4, 1998, the legislature enacted No. 98-139, § 2, of the 1998 Public Acts (P.A. 98-139), which amended § 10-233d, in an effort to clarify when conduct is to be considered "seriously disruptive of the educational process." P.A. 98-139, § 2, which was effective upon passage, added the following language to § 10-233d (a) (1): "In making a determination as to whether conduct is seriously disruptive of the educational process, the board of education or impartial hearing board may consider, but such consideration shall not be limited to: (a) whether the incident occurred within close proximity of a school; (b) whether other students from the school were involved or whether there was any gang involvement; (c) whether the conduct involved violence, threats of violence or the unlawful use of a weapon, as defined in section 29-38, and whether any injuries occurred; and (d) whether the conduct involved the use of alcohol." This court previously has held that "[w]hen . . . events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, [an issue] has become moot." (Internal quotation marks omitted.) *Loisel* v. *Rowe*, 233 Conn. 370, 378, 660 A.2d

323 (1995). "Mootness implicates the subject matter jurisdiction of this court." *Sadlowski* v. *Manchester*, 206 Conn. 579, 583, 538 A.2d 1052 (1988).

Second, by reaching the constitutional issues in this case we fail to follow our long-standing "policy of self-restraint and the basic judicial duty to eschew unnecessary determinations of constitutional questions." *Negron* v. *Warden,* 180 Conn. 153, 166, 429 A.2d 841 (1980). Notwithstanding its constitutional excursion, the trial court concluded that even if § 10-233d was constitutional, the named plaintiff's possession of marijuana off school grounds was not seriously disruptive of the educational process.

Third, at the time of the expulsion, the named plaintiff was a senior in high school. The defendant specifically provided in its order of expulsion that the expulsion be expunged from the named plaintiff's record at the time of graduation pursuant to § 10-233d (f). In addition, the trial court enjoined the defendant from enforcing the expulsion order as well as the other disciplinary actions pertaining to school activities. I take judicial notice that the school year has now ended. Because, in all probability, the named plaintiff has graduated from high school and the record of expulsion has been expunged, there is nothing left before the trial court to be adjudicated except the possibility of money damages. At best, the majority opinion with respect to the constitutional issue is an advisory opinion and, therefore, beyond the jurisdiction of this court. "We have consistently held that we do not render advisory opinions. . . . Justiciability requires . . . that there be an actual controversy between or among the parties to the dispute . . . . [W]here the question presented is purely academic, we must refuse to entertain the appeal." (Citations omitted; internal quotation marks omitted.) *Domestic Violence Services of Greater New Haven, Inc.* v. *Freedom of Information Commission,* 240 Conn. 1,

6–7, 688 A.2d 314 (1997). "[U]nder the law of this state the courts may not be used as a vehicle to obtain judicial opinions on points of law." (Internal quotation marks omitted.) Id.

Finally, there exists an additional good reason why this court should not reach the constitutional issues, facial or as applied, in this case. In the wake of the trial court's opinion in this case, the legislature adopted P.A. 98-139. Although that enactment authorizes the defendant to take into account certain specific considerations when determining "whether conduct is seriously disruptive of the educational process," including "whether the conduct involved the use of alcohol," P.A. 98-139 does not specify the possession of marijuana as a factor to be considered. "If an amendment is enacted soon after controversies arise regarding the interpretation of the prior act, it is logical to regard the amendment as a legislative interpretation of the original act . . . ." (Internal quotation marks omitted.) *Turner* v. *Turner*, 219 Conn. 703, 717, 595 A.2d 297 (1991). In this case, the legislature's interpretation of its prior enactment emphasizes certain conduct that presumably has the greatest potential to seriously threaten the educational process. Notwithstanding the legislature's omission of the possession of marijuana from P.A. 98-139—the conduct that sparked the controversy and prompted the amendment of § 10-233d in the first instance—the majority gratuitously posits that it does not mean to suggest that the possession of marijuana off school grounds could not be the basis of discipline. Although the list of criteria added by P.A. 98-139 is not exclusive, I would leave this issue to another day.

Accordingly, I concur in the result.

NORCOTT, J., concurring. I agree with the majority opinion that General Statutes § 10-233d (a) (1) is constitutional on its face. With less fervor than that opinion,

however, I also agree with the conclusion that the statute as applied to the named plaintiff (plaintiff) does not support his expulsion from Thomaston High School.

First, I completely agree with the defendant board of education when it argues that the plaintiff was fully aware that his arrest for possession of marijuana, under the circumstances of this case, could possibly subject him to expulsion. Certainly the Thomaston High School student handbook left little doubt as to this.[1] Further, the plaintiff's testimony 'at his expulsion hearing evinced the fact that foremost on his mind at the time of his arrest was dismissal from the soccer team and expulsion from school, not necessarily in that order. As the majority aptly notes, the test is whether a person of ordinary intelligence could determine with a reasonable degree of certainty whether the plaintiff's conduct would subject him to expulsion. The student handbook provided the plaintiff with notice that his conduct, under circumstances seriously disruptive of the educational process, would subject him to expulsion. Although the plaintiff was apprised that his conduct violated school policy, what the plaintiff was not apprised of was whether the resulting reaction of the high school would result in a serious disruption of the educational process.

Second, it seems to me that although the record alludes to several instances[2] where the defendant perhaps could have supported the conclusion that the plaintiff's off school grounds criminal conduct involving

[1] The Thomaston High School student handbook (1997–98) provides in relevant part: "Students are subject to discipline, up to and including suspension and expulsion for misconduct which is seriously disruptive of the educational process and is a violation of a publicized board policy, even if such conduct occurs off school property and during non-school time.

"Examples of off-school conduct that may result in such discipline include . . . [u]se, possession or distribution of illegal drugs. . . ."

[2] See footnote 7 of the majority opinion.

a narcotic substance was "seriously disruptive of the educational process" within the meaning of § 10-233d (a) (1), for whatever reasons, the defendant and other relevant school officials did not establish the necessary nexus between the plaintiff's conduct and the disruption of the operations of the high school. Accordingly, I agree with the majority that this vacuum renders the statute unconstitutional as applied to the plaintiff.

Daily administration of public education is the responsibility of state and local school officials, and with that responsibility, school officials possess inherent discretion to proscribe and control student conduct. I write separately specifically to acknowledge the discretion that necessarily must repose in the school board to effectuate an environment conducive to learning. The majority relegates to a footnote the assertion that its opinion does not "suggest that there is no set of circumstances under which possession of illegal drugs off school grounds would markedly interrupt or severely impede the day-to-day operation of a school and, therefore, constitute behavior that is 'seriously disruptive of the educational process' as required by § 10-233d (a) (1)." See footnote 25 of the majority opinion. This significant statement merits greater emphasis, lest this case be construed as limiting the discretion of school officials to impose disciplinary action when off campus conduct disrupts the educational process. Had the defendant here "made its case" more substantively with regard to the aforementioned nexus, I would have much more serious disagreement with the majority opinion because of the deference I conclude should be accorded to school authorities, and the restraint I believe this court should exercise in substituting its assessment of what constitutes "seriously disruptive conduct" in today's academic environment for that of the defendant. Because of the unique facts of the present case, it should not be understood as an invitation

for every student to challenge disciplinary action imposed for off-campus conduct as a constitutional violation.

It is a well established principle that courts should exercise caution in interfering with school discipline. See *Tinker* v. *Des Moines Independent Community School District*, 393 U.S. 503, 507, 89 S. Ct. 733, 21 L. Ed. 2d 731 (1969) ("[t]he Court has repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials . . . to prescribe and control conduct in the schools"); *Epperson* v. *Arkansas*, 393 U.S. 97, 104, 89 S. Ct. 266, 21 L. Ed. 2d 228 (1968) ("[j]udicial interposition in the operation of the public school system . . . raises problems requiring care and restraint"); *Stephenson* v. *Davenport Community School District*, 110 F.3d 1303, 1306 (8th Cir. 1997) ("we enter the realm of school discipline with caution"); *Campbell* v. *St. Tammany Parish School Board*, 64 F.3d 184, 187–88 (5th Cir. 1995) ("public school officials have broad discretion in the management of school affairs and . . . courts should not lightly interfere with the 'daily operation of school systems' "); *Thomas* v. *Board of Education, Granville Central School District*, 607 F.2d 1043, 1044 (2d Cir. 1979) ("Public education in America enables our nation's youth to become responsible participants in a self-governing society. To perform this critical function effectively, professional educators must be accorded substantial discretion to oversee properly their myriad responsibilities."); *Murray* v. *West Baton Rouge Parish School Board*, 472 F.2d 438, 442 (5th Cir. 1973) ("[i]t is clear . . . that school disciplinary codes cannot be drawn with the same precision as criminal codes and that some degree of discretion must, of necessity, be left to public school officials to determine what forms of misbehavior should be sanctioned"); *Smith* v. *School City of Hobart*, 811 F. Sup. 391, 393 (N.D. Ind. 1993)

("School discipline is not an area in which courts lay claim to any expertise, nor should consider lightly. . . . 'Because of their expertise and their closest situation—and because we do not want them to fear court challenges to their every act—school officials are given wide discretion in their disciplinary actions.' "); *Broussard by Lord* v. *School Board of Norfolk*, 801 F. Sup. 1526, 1536 (E.D. Va. 1992) ("The Supreme Court has given great deference to school boards, as in [*Bethel School District No. 403* v. *Fraser*, 478 U.S. 675, 106 S. Ct. 3159, 92 L. Ed. 2d 549 (1986)]. . . . This Court, too, believes that school boards, school administrators, principals, and teachers must be permitted to govern schools . . . . The federal courts, ill-suited as they are to second guess decisions of school authorities, should interfere only in the most stringent circumstances." [Citations omitted; internal quotation marks omitted.]).

We have neither the expertise nor the inclination to assume the micromanagement of student discipline. Schools face student conduct that simply defies a standard response and the statute provides the school board the flexibility to demonstrate that certain conduct meets the criteria for student expulsion. I am loathe to see the judicial system intervene in such a dynamic environment in which it has little expertise. In times that are marked daily with tales of violence and danger in our public schools, we do society no favor by toying with the few tools of discipline left to school authorities.

Nonetheless, for the reasons set forth previously, I concur in the result.

PALMER, J., concurring. Although I agree with the majority that General Statutes § 10-233d (a) (1) is constitutional on its face, I am unable to join that portion of the majority opinion that addresses the question of whether § 10-233d (a) (1) is unconstitutional as applied

to the facts of this case because, in my view, it simply is not necessary to reach that constitutional issue.

It is fundamental that, "wherever possible, it is incumbent upon a court to consider statutory issues before reaching constitutional questions." *DeBeradinis* v. *Zoning Commission*, 228 Conn. 187, 195, 635 A.2d 1220 (1994). Having acknowledged this "recognized policy of self-restraint and the basic . . . duty to eschew unnecessary determinations of constitutional questions"; id.; the majority nevertheless reaches out to decide whether § 10-233d (a) (1) is unconstitutional as applied to this case *without first addressing the plaintiff's*[1] *predicate statutory claim*, namely, that his conduct did not violate § 10-233d (a) (1). Although the plaintiff's illegal possession of marijuana off the school grounds was deplorable, and although school officials must be afforded substantial leeway to regulate and deter student misconduct, I am constrained to agree with the trial court that the defendant board of education (board) failed to prove that the plaintiff's drug possession was such as to "markedly [interrupt] or severely [impede] the day-to-day operation of [the] school," the standard that must be met to justify expulsion for off-campus conduct under the "seriously disruptive of the educational process" requirement of § 10-233d (a) (1).[2] Because the board did not prove a violation of § 10-233d (a) (1), there is no reason to reach the question of whether that statutory provision passes constitutional muster under the facts of this case.

I do agree with the majority, however, that there is a compelling reason to decide whether § 10-233d (a)

---

[1] All references in this concurring opinion to the plaintiff are to the named plaintiff, Kyle P. Packer.

[2] I express no view as to whether the board might have been able to meet the statutory standard had it adduced additional evidence regarding the manner in which the plaintiff's conduct had seriously disrupted the school's day-to-day operations.

(1) is capable of having *any* constitutionally valid application. The judgment of the trial court declaring § 10-233d (a) (1) to be *facially* unconstitutional presents "a matter of substantial public interest" because the trial court's conclusion that § 10-233d (a) (1) is unconstitutional on its face has cast doubt on the validity of that statutory provision, with implications statewide. Accordingly, it is appropriate to address *that* constitutional issue. Moreover, for the reasons articulated in the majority opinion, I agree that the trial court improperly concluded that § 10-233d (a) (1) is facially unconstitutional.

By contrast, however, I see no reason to decide whether § 10-233d (a) (1) is constitutional as applied to the facts of this case *absent a predicate showing that the plaintiff violated that statutory provision.* To do so violates our well established policy against deciding constitutional issues unless it is necessary to do so.

Accordingly, I concur in the result.

MCDONALD, J., concurring in part and dissenting in part. I agree with the majority that General Statutes § 10-233d (a) (1) is constitutional on its face. I disagree, however, that the application of the statute to the named plaintiff (plaintiff) does not support his expulsion from Thomaston High School.

The defendant board of education found that the plaintiff possessed two ounces of marijuana. The plaintiff's younger brother, also a Thomaston High School student, was with the plaintiff when he was arrested. The Thomaston High School student handbook explicitly provides that the possession of illegal drugs, such as marijuana, is grounds for expulsion.[1] The plaintiff

---

[1] Page 26 of the Thomaston High School student handbook provides in relevant part: "OUT OF SCHOOL MISCONDUCT

"Students are subject to discipline, up to and including suspension and expulsion for misconduct which is seriously disruptive of the educational

clearly was warned of the possible consequences of his drug possession. Furthermore, the plaintiff testified at his expulsion hearing that he knew he could be expelled for possession of marijuana.[2]

The majority finds that possession of marijuana might not be recognized by students as conduct "seriously disruptive of the educational process." To the contrary, it can be said that illegal drugs are disrupting America. See Drug-Free Communities Act of 1997, Pub. L. No. 105-20, 111 Stat. 224 (1997) (to be codified at 21 U.S.C. § 1521 et seq.);[3] Marijuana Use in America: Hearing

---

process and is a violation of a publicized board policy, even if such conduct occurs off school property and during non-school time.

"Examples of off-school conduct that may result in such discipline include but are not limited to . . .

"2. Use, possession or distribution of illegal drugs."

[2] The transcript of the school expulsion hearing provides in relevant part:

"George Counter [Superintendent of Schools]: How did you feel that night when the police said is that roach in your tray, there—or whatever happened?

"[The plaintiff]: Scared.

"George Counter: What went through your mind right then?

"[The plaintiff]: Name in the paper; soccer; school.

"George Counter: It's amazing how much can go through there in one second.

"[The plaintiff]: Oh, yeah.

"George Counter: I have to make a decision tonight. What do you think? What do you think I should do?

"[The plaintiff]: I don't know. What do you think you should do? How do you think . . .

"[The plaintiff]: These past two weeks, I've gone through an awful lot. I've been sitting here wondering what's going to happen to me, you know? It's not like, I mean, it wasn't like when it happened I was punished and that was it. I put it behind me. I've been sitting here waiting, sweating about it, just wondering what's going to happen to me. Am I going to be kicked off the soccer team? Am I going to get kicked out of school? That's all that's on my mind. That's all that's been on my mind up until this night. I mean this could affect my whole future."

[3] Among the findings of Congress in enacting the Drug-Free Communities Act of 1997 was that "substance abuse among youth[s] has more than doubled in the 5-year period preceding 1996, with substantial increases in the use of marijuana, inhalants, cocaine, methamphetamine, LSD, and heroin." Drug-Free Communities Act of 1997, Pub. L. No. 105-20, § 1021, 111 Stat. 224 (to be codified at 21 U.S.C. § 1521 [1]).

Before the Subcommittee on Crime of the Committee on the Judiciary, 104th Cong., 2d Sess. (1996).[4] It was, therefore, reasonable for the school board to find that the plaintiff's conduct seriously disrupted the educational process. It would also be reasonable to conclude that a student of reasonable intelligence would know, as the plaintiff admits in this case, that he or she might be expelled from school for this type of conduct.

The majority reasons that mere possession of marijuana does not constitute conduct "seriously disruptive

---

[4] The subcommittee hearing transcript provides in relevant part: "In recent years there have been four significant changes regarding marijuana that should concern all of us. First, users are younger. In 1992 the average age of first-time marijuana users was 14 to 17; today the average age is 13 to 15. What was once rare is becoming commonplace, with 12- and 13-year-olds now regularly entering treatment centers.

"Second, the typical marijuana dose today is significantly larger than in past years, with doses now often laced with other drugs. As a result, from 1993 to 1994, there was a 50-percent increase in the number of marijuana-related emergency room episodes for 12- to 17-year-olds.

"Third, the potency of marijuana has increased substantially in recent years. According to the Drug Enforcement Administration, the THC content in marijuana has doubled in the last decade due to cloning and genetic manipulation.

"And, fourth, the harmful effects of marijuana are now absolutely clear. Extensive studies of marijuana reveal many dangers associated with the drug, including the gateway effect. According to a study [by] Columbia University's Center on Addiction and Substance Abuse, 12- to 17-year-olds who use marijuana are 85 times more likely to use cocaine than those who abstain from marijuana. The study further reveals that 60 percent of adolescents who use marijuana before the age of 15 will later use cocaine, while 43 percent of teenagers who use marijuana by age 18 will later use cocaine. . . .

"America's younger generation today sees fewer risks and more personal rewards associated with marijuana use. . . . Youth[s] are seeing less risk in drugs for various reasons. Perhaps foremost among them is that condemning messages about drugs are too often being replaced with encouraging messages.

"Tragically, many of our cultural institutions are no longer allies in stigmatizing drug use. . . ." Marijuana Use in America: Hearing Before the Subcommittee on Crime of the Committee on the Judiciary, supra, p. 3 (opening statement of Representative Bill McCollum, chairman, subcommittee on crime).

of the educational process." In doing so, it fails to recognize the effect of drug use upon a student's educational life. Conduct closing down the school should not be required. The majority substitutes its judgment for that of the elected school board. We should be mindful that we were not appointed to be "social engineers" and we should leave policy to those elected by the people in a government of and by the people. See *Claremont School District* v. *Governor*, 142 N.H. 462, 477–78, 703 A.2d 1353 (1997) (Horton, J., dissenting).

The majority concludes that the plaintiff should not be decorated for his conduct and that "he probably is a thorn in the side of the [school] administration . . . ." What the majority fails to recognize, however, is the need for school administrators to set a rule of zero drug tolerance for students on or off campus in order to educate each student. Unfortunately, this decision serves neither the public interest in education nor students.

Accordingly, I respectfully dissent.