Porcha Busch, a minor, by and through her
mother and next friend, Gwen Knave, appellant, v.
Omaha Public School District et al., appellees.
623 N.W. 2d 672

Filed March 30, 2001. No. S-98-1374.

Daniel J. Welch, of Welch Law Firm, P.C., for appellant.

David M. Pedersen and Maya C. Samms, of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, for appellees.

Hendry, C.J., Wright, Connolly, Gerrard, Stephan, and McCormack, JJ.

Gerrard, J.

## NATURE OF CASE

Porcha Busch was expelled from school by the Omaha Public School District (OPS) after a fight with another student during which Busch accidentally struck and injured an assistant principal who was attempting to restrain Busch and break up the fight. Busch argues that OPS exceeded its statutory authority by adopting the rule pursuant to which Busch was expelled. The district court disagreed and upheld the expulsion. Because we determine that OPS acted within its statutory authority, we affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts of this case are essentially undisputed. At the time of the incident in question, Busch was in the seventh grade at the McMillan Magnet Center in Omaha, Nebraska. On September 30, 1998, Busch became involved in a physical alter-

cation with another student with whom Busch had a history of disagreements. Four staff members, including the assistant principal, intervened to stop the fight. Despite being restrained, Busch continued to fling her arms in an attempt to break away and reach the other student.

During her struggling, Busch's hand struck and injured the assistant principal on the left side of her nose and upper lip. Both Busch and the assistant principal testified that although Busch was very angry at the other student, Busch did not specifically intend to strike the assistant principal.

Busch was immediately suspended, and she and her mother were notified that the McMillan Magnet Center administration was recommending that she be expelled from classes for the remainder of the first semester of the 1998-99 school year. Upon receiving notification of the recommendation of expulsion, Busch and her mother requested a due process hearing before a hearing officer. After holding the hearing requested by Busch, the hearing officer upheld the recommendation of expulsion for the remainder of the semester. Busch and her mother appealed the hearing officer's decision to a committee of school board members, and an ad hoc committee of the OPS board of education, on October 23, 1998, upheld the expulsion for the remainder of the first semester of the 1998-99 school year.

Busch, by and through her mother, filed a petition in error in the district court, arguing, inter alia, that OPS exceeded its statutory authority in adopting the rule pursuant to which Busch was expelled. That rule, OPS Student Code of Conduct rule 1(b), provides:

> **Injuring a school employee who is attempting to break up or prevent a physical confrontation**
>
> Students are forbidden by the use of violence or force to cause personal injury to a school employee who is attempting to break up or prevent a physical confrontation. Such use of violence or force constitutes a substantial interference with school purposes.
>
> **First Offense:** Expulsion. Remainder of the semester. Law Enforcement will be contacted.

Busch argued that this rule exceeded the authority granted to OPS by Neb. Rev. Stat. § 79-267(3) (Reissue 1996), as inter-

preted by this court's decision in *Spencer v. Omaha Pub. Sch. Dist.*, 252 Neb. 750, 566 N.W.2d 757 (1997). Busch also argued that the rule was not "clear and definite" as required by Neb. Rev. Stat. § 79-262(1) (Reissue 1996).

The district court rejected Busch's arguments, determining that rule 1(b) was sufficiently clear and definite and was based on the authority of § 79-267(1), not § 79-267(3). Consequently, the district court entered a judgment affirming Busch's expulsion. Busch, by and through her mother, appealed. We granted the parties' petitions to bypass the Nebraska Court of Appeals.

## ASSIGNMENTS OF ERROR

Busch assigns, consolidated and restated, that the district court erred in failing to reverse the decision of OPS because (1) rule 1(b) was outside the statutory authority of § 79-267 and (2) rule 1(b) is not clear and definite as required by § 79-262(1).

## STANDARD OF REVIEW

Appeals from the district court under the Student Discipline Act, Neb. Rev. Stat. § 79-254 et seq. (Reissue 1996 & Cum. Supp. 2000), are governed by the Administrative Procedure Act. § 79-292. See, also, *Spencer v. Omaha Pub. Sch. Dist., supra*; *Kolesnick v. Omaha Pub. Sch. Dist.*, 251 Neb. 575, 558 N.W.2d 807 (1997). A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Gottsch Feeding Corp. v. State, ante* p. 19, 621 N.W.2d 109 (2001); *Affiliated Foods Co-op v. State*, 259 Neb. 549, 611 N.W.2d 105 (2000). When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Tilt-Up Concrete v. Star City/Federal, ante* p. 64, 621 N.W.2d 502 (2001).

## ANALYSIS

### STATUTORY AUTHORITY

 We have long acknowledged that school boards are creatures of statute, and their powers are limited. *Spencer v. Omaha Pub. Sch. Dist., supra.* Any action taken by a school board must be through either an express or an implied power conferred by legislative grant. *Id.*

 Thus, it is important to recognize from the outset that the Legislature sets the broad policy for maintenance of discipline in the schools in this state. The local school boards in turn are charged with the responsibility for promulgating rules that maintain order and foster a safe and appropriate learning environment for students and staff within the parameters of the policies set forth by the Legislature. Absent any suggestion that a particular school rule violates some statutory or substantive constitutional guarantee, the courts generally defer to that legislative and local judgment, and refrain from attempting to distinguish between the rules that are important to the preservation of order in the schools and rules that are not. See *New Jersey v. T. L. O.*, 469 U.S. 325, 105 S. Ct. 733, 83 L. Ed. 2d 720 (1985). See, also, *Kolesnick v. Omaha Pub. Sch. Dist., supra.*

 The Legislature, within this framework, passed the Student Discipline Act, § 79-254 et seq. The stated purpose of the Student Discipline Act is "to [en]sure the protection of all elementary and secondary school students' constitutional right to due process and fundamental fairness *within the context of an orderly and effective educational process.*" (Emphasis supplied.) § 79-255. As part of the Student Discipline Act, the Legislature set forth the types of student conduct that may be, in the judgment of the local school boards, grounds for long-term suspension, expulsion, or mandatory reassignment of offending students. Section 79-267 provides, in relevant part:

The following student conduct shall constitute grounds for long-term suspension, expulsion, or mandatory reassignment, subject to the procedural provisions of the Student Discipline Act . . . :

(1) Use of violence, force, coercion, threat, intimidation, or similar conduct in a manner that constitutes a substantial interference with school purposes;

. . . .

(3) Causing or attempting to cause personal injury to a school employee, to a school volunteer, or to any student. Personal injury caused by accident, self-defense, or other action undertaken on the reasonable belief that it was necessary to protect some other person shall not constitute a violation of this subdivision.

OPS subsequently passed rule 1(b), which was modeled after the language contained in § 79-267(1).

Busch first argues that OPS acted outside the scope of authority granted to school districts by § 79-267(3) when it passed rule 1(b) and applied the rule in the instant case. Busch's argument is based on this court's application of § 79-267(3) in *Spencer v. Omaha Pub. Sch. Dist.*, 252 Neb. 750, 566 N.W.2d 757 (1997). In *Spencer*, OPS had adopted a rule that provided for the expulsion of a student for causing injury to another student and provided that it would not be a defense to the charge of assault that the student did not intend to hurt anyone. This court held that an injury caused "by accident," within the meaning of § 79-267(3), is "one which is caused accidentally, unintentionally, or unexpectedly." *Spencer v. Omaha Pub. Sch. Dist.*, 252 Neb. at 755, 566 N.W.2d at 760. This court, limiting its analysis to § 79-267(3), noted that the rule adopted by OPS did not permit the defense that the act caused a result that was accidental and, thus, concluded that the school board exceeded its statutory authority in adopting the rule. See *id*.

Busch maintains that the rule at issue in the instant case is like that in *Spencer* in that the rule does not permit a defense that the injury was caused accidentally and thus exceeds the statutory authority of § 79-267(3). OPS argues that rule 1(b) is authorized by § 79-267(1) and that the school district is not relying on § 79-267(3) as the enabling section of the statute. OPS asserts that the use of violence or force upon a school employee who is attempting to break up or prevent a physical confrontation, in and of itself, constitutes a substantial interference with school purposes, and when personal injury to the school employee occurs (whether intentional or not), expulsion is warranted under § 79-267(1).

The initial question presented, then, is whether rule 1(b) is indeed authorized by § 79-267(1). In considering the validity of rule 1(b), we note that generally, courts will presume that legislative or rulemaking bodies, in enacting ordinances or rules, acted within their authority and that the burden rests on those who challenge their validity. See, e.g., *Village of Winside v. Jackson*, 250 Neb. 851, 553 N.W.2d 476 (1996); *Giger v. City of Omaha*, 232 Neb. 676, 442 N.W.2d 182 (1989).

Section 79-267(1) provides that the use of violence, force, coercion, threat, intimidation, or similar conduct in a manner that constitutes a substantial interference with school purposes may constitute grounds for long-term suspension, expulsion, or mandatory reassignment of an offending student. This court has not previously considered the meaning of "substantial interference with school purposes" as that phrase is used in § 79-267(1). The Supreme Court of Connecticut, however, considered a similar issue in *Packer v. Board of Education*, 246 Conn. 89, 717 A.2d 117 (1998). In that case, the school sought to discipline a student for conduct that was " 'seriously disruptive of the educational process,' " within the meaning of a Connecticut statute. *Id.* at 104, 717 A.2d at 131. The court considered the context and common meaning of the statutory terms and concluded that conduct that was "seriously disruptive of the educational process" was that conduct which markedly interrupts or severely impedes the day-to-day operation of a school. *Id.*

Furthermore, the term "school purposes" includes the maintenance of an orderly and effective educational system. *Board of School Trustees v. Barnell*, 678 N.E.2d 799 (Ind. App. 1997). See, also, § 79-255. For many adolescents, learning is a discipline rather than a pleasure and it must be carried on in dignified and orderly surroundings if it is to be practiced satisfactorily. *In re C.M.J.*, 259 Kan. 854, 915 P.2d 62 (1996). We agree with these courts and find their reasoning instructive as we consider the commonsense meaning of what "constitutes a substantial interference with school purposes" within the context of § 79-267(1).

The day-to-day operation of a school requires that a safe learning environment be provided for students and school employees, and "school purposes" certainly include the mainte-

nance of such an environment. The maintenance of discipline in the schools requires not only that students be restrained from assaulting one another, but also that students conform themselves to reasonable standards of conduct prescribed by school authorities. See *New Jersey v. T. L. O.*, 469 U.S. 325, 105 S. Ct. 733, 83 L. Ed. 2d 720 (1985). The promulgation of a rule that forbids the use of violence or force which causes injury to a school employee who is attempting to break up or prevent a physical confrontation clearly advances an appropriate school purpose. It is difficult to imagine a more substantial interference with a school employee's performance of that function than the use of violence or force which causes personal injury to an employee while he or she is attempting to break up or prevent a physical confrontation.

The promulgation of such a rule also presumably reflects a judgment on the part of school officials that such conduct is destructive of school order or of a proper educational environment. See *id.* Because there has been no suggestion that rule 1(b) violates some substantive constitutional guarantee in the instant case, we appropriately defer to the judgment of local school officials in determining the appropriate sanction, within the guidelines of § 79-267, for violating rule 1(b). Consequently, we hold that the use of violence or force which causes personal injury to a school employee who is attempting to break up or prevent a physical confrontation constitutes a substantial interference with school purposes within the meaning of § 79-267(1).

Busch argues that this interpretation of § 79-267 has the effect of making § 79-267(1) an exception to the "accident" defense set forth in § 79-267(3) and that "[t]he message from the Legislature is that students should not be expelled for unintentional acts without exception." Substituted brief for appellant at 10. Busch's argument fails for several reasons.

First, § 79-267(3) specifically states that personal injury caused by accident, self-defense, or an action undertaken to protect another person "shall not constitute a violation *of this subdivision*." (Emphasis supplied.) The language of the statute makes clear that while accidental injuries are excepted from the discipline authorized by § 79-267(3), that exception does not apply to other subsections of § 79-267.

Second, it is quite apparent from the plain language of the statute that the Legislature, in enacting § 79-267(1) and (3), allows school districts to impose discipline upon students for two distinct types of violations. Section 79-267(1) is intended to allow school districts to discipline students for using violence, force, intimidation, or similar conduct in a manner that substantially interferes with school purposes. That violence, force, or intimidation can take many forms (including but not limited to assaultive behavior), but if the specified conduct substantially interferes with school purposes, the student may appropriately be disciplined. Intent is not a necessary element of § 79-267(1), and accidental injury is not a defense under this subsection. Under § 79-267(1), it frankly does not make any difference whether a student *intends* to cause personal injury to a school employee while a fight is being broken up; the substantial interference with school purposes begins with the initiation of a physical confrontation and continues with the student's use of violence or force while the combatants are being separated.

Section 79-267(3), on the other hand, enables school districts to discipline students for intentionally or knowingly causing personal injury to a school employee, school volunteer, or fellow student. It is specifically provided that personal injury caused by accident shall not constitute a violation of *this particular subsection*. Section 79-267(3) deals narrowly with intentional assaults and batteries in the school setting. However, both § 79-267(1) and (3) were enacted by the Legislature at the same time in 1976 Neb. Laws, L.B. 503. In addition, six other subsections of § 79-267 were enacted at the same time in L.B. 503, each of which provided independent sources of authority for school districts to discipline students for behaviors such as theft, robbery, destruction of property, selling or possessing drugs or alcohol, and possessing or transmitting a weapon. See § 79-267(1) through (10) (separate subsections for public indecency and sexual assault were added later by amendment). Obviously, certain types of behavior such as an intentional battery, robbery, sexual assault, and other such conduct may simultaneously constitute a violation of several subsections of § 79-267 and several sections of a school's code of conduct. Conversely, under a plain reading of the statute, a particular

instance of student conduct may be punishable under one sub-section of § 79-267, despite being excepted from the scope of another subsection.

 Therefore, we reject the underlying premise of Busch's argument, that the subsections of § 79-267 were intended by the Legislature to be exclusive of one another. While § 79-267 sets forth several types of student conduct that constitute grounds for discipline, the statute does not provide that conduct punishable under one subsection precludes the con-sideration of that conduct in light of other subsections of the statute. In the absence of any indication that the Legislature intended otherwise, the underlying purpose of the statute leads us to conclude that the subsections of § 79-267 are coextensive and that a particular instance of student conduct may constitute grounds for discipline under more than one subsection of the statute. As a corollary, we determine that a particular instance of student conduct may be punishable under a subsection of § 79-267 despite being excepted from the scope of another sub-section, so long as the conduct meets the requirements of the subsection under which the school district seeks to discipline the student.

We conclude that OPS did not exceed its authority in adopt-ing rule 1(b), as the use of violence or force to cause personal injury to a school employee who is attempting to prevent or break up a fight is a substantial interference with school pur-poses within the meaning of § 79-267(1). We further conclude that the "accidental" injury exception set forth in § 79-267(3) and interpreted in *Spencer v. Omaha Pub. Sch. Dist.*, 252 Neb. 750, 566 N.W.2d 757 (1997), is limited to that subsection and does not preclude the punishment of student conduct that con-stitutes grounds for discipline under another subsection. The district court properly concluded that Busch's conduct consti-tuted a substantial interference with school purposes and vio-lated rule 1(b) of the OPS Student Code of Conduct. Busch's first assignment of error is without merit.

CLEAR AND DEFINITE

Busch also argues that rule 1(b) is not "clear and definite" as required by § 79-262(1), which provides, in relevant part:

> The school board or board of education shall establish and promulgate rules and standards concerning student conduct which are reasonably necessary to carry out or to prevent interference with carrying out any educational function, if such rules and standards are clear and definite so as to provide clear notice to the student and his or her parent or guardian as to the conduct prescribed, prohibited, or required under the rules and standards.

Busch concedes that she and her mother had been provided a copy of the student code of conduct at the beginning of the 1998-99 semester and that rule 1(b) was clear in providing that students may not use violence or force to cause personal injury to a school employee. Busch's argument is that it is unclear and indefinite as to whether or not that force must be intentional to warrant expulsion under the rule. We disagree.

■ Rule 1(b) does not address whether an injury to a school employee attempting to prevent or break up a physical altercation must be intentional in order to warrant expulsion. The plain language of the rule simply provides that causing injury to a school employee who is attempting to prevent or break up a fight will be punished by expulsion for the remainder of the semester. In the absence of anything to the contrary, language contained in a rule or regulation is to be given its plain and ordinary meaning. *Vinci v. Nebraska Dept. of Corr. Servs.*, 253 Neb. 423, 571 N.W.2d 53 (1997). The determinative factor set forth by the plain language of the rule is not whether injury was intended, but is simply whether injury was caused by force or violence while the school employee was breaking up or preventing a physical confrontation.

In the context of constitutional due process, the U.S. Supreme Court has stated that "[g]iven the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions." *Bethel School Dist. No. 403 v. Fraser*, 478 U.S. 675, 686, 106 S. Ct. 3159, 92 L. Ed. 2d 549 (1986). This reasoning applies equally to our analysis of rule 1(b). Rule 1(b) plainly states that a student who causes injury (by violence or force) to a school employee attempting to pre-

vent or break up a physical altercation will be punished by expulsion—period, end of discussion. The language of rule 1(b) could not be more clear or definite and provided sufficient notice to Busch and her mother of the conduct prohibited under the rule. Busch's second assignment of error is without merit.

## CONCLUSION

We conclude that § 79-267(1) enables school districts to discipline students for the use of violence or force which causes injury to a school employee who is attempting to break up or prevent a physical confrontation, as such conduct constitutes a substantial interference with school purposes. Therefore, OPS did not exceed the statutory authority of § 79-267(1) in adopting rule 1(b), and rule 1(b) is sufficiently clear and definite to satisfy the requirements of § 79-262(1). For the reasons stated herein, we affirm the judgment of the district court.

AFFIRMED.

MILLER-LERMAN, J., not participating.