776 N.W.2d 786 (2009)
279 Neb. 30
Anne UNDERHILL, appellant,
v.
Shiloh HOBELMAN, appellee.
No. S-09-150.
Supreme Court of Nebraska.
December 18, 2009.
*787 Gary J. Nedved and Joel Bacon, of Keating, O'Gara, Nedved & Peter, P.C., L.L.O., Lincoln, for appellant.
Travis P. O'Gorman, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., Lincoln, for appellee.
HEAVICAN, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
PER CURIAM.

NATURE OF CASE
The sole issue in this appeal is whether an amendment to Neb.Rev.Stat. § 54-601 (Reissue 2004), which inserted the word "injuring" to the list of recoverable actions, expands the statute's coverage to include damages caused by a dog's playful or mischievous behavior. Anne Underhill filed a complaint against Shiloh Hobelman, seeking damages for injuries she sustained when Hobelman's dog ran into her knee, causing her to fall. Underhill appeals the district court's order granting partial summary judgment in favor of Hobelman. The district court concluded that Hobelman was not strictly liable pursuant to § 54-601 for Underhill's injuries, because the dog was not acting maliciously. We affirm the decision of the district court.

BACKGROUND
The facts of this case are undisputed. Underhill and Hobelman are friends. On December 31, 2005, Underhill went to meet Hobelman at his dormitory room so that the two could go out for dinner. Underhill parked her car and, as she was walking toward Hobelman's dormitory room, she saw Hobelman's mother walking Brady, Hobelman's golden retriever. Brady has been trained to assist Hobelman with his day-to-day tasks, and Brady responds to both verbal commands and hand gestures. Brady recognized Underhill and began wagging his tail. Because Underhill was familiar with Brady, Hobelman's mother let him off his leash to greet Underhill.
Once Brady was off the leash, he started running toward Underhill. Underhill testified at her deposition that Brady was not running at her in a threatening manner and that he did not display any intent to harm her. However, Brady was running very fast and he ran into Underhill's left knee, causing her to lose her balance and fall. As a result of this fall, Underhill suffered injuries to her knee, which required surgery. Because Underhill could no longer afford her medical bills, she filed suit against Hobelman.
Underhill filed suit against Hobelman, asserting two theories of recovery: strict liability pursuant to § 54-601 and negligence. Underhill subsequently dismissed her cause of action for negligence. Underhill's main argument on appeal is that the amendment to § 54-601 inserting the word "injuring" to the list of recoverable damages expands the scope of coverage to include damages caused from a dog's playful or mischievous behavior.
*788 The district court concluded that the amendment to § 54-601 was not intended to expand coverage from injuries sustained from a dog's playful or mischievous conduct. In so concluding, the district court explained that it is bound by the doctrine of vertical stare decisis and that thus, it relied on previous case law interpreting § 54-601 to exclude from its coverage the playful and mischievous acts of dogs. Underhill appealed, and we granted her petition to bypass the Nebraska Court of Appeals.

ASSIGNMENT OF ERROR
Underhill alleges, restated and consolidated, that the district court erred in granting partial summary judgment in favor of Hobelman, concluding that Hobelman was not strictly liable pursuant to § 54-601 because his dog was acting playfully and not maliciously.

STANDARD OF REVIEW
Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[1] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, giving that party the benefit of all reasonable inferences deducible from the evidence.[2]
Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.[3]

ANALYSIS
This appeal turns on our application of § 54-601, which provides in relevant part that
the owner or owners of any dog or dogs shall be liable for any and all damages that may accrue (1) to any person ... by reason of having been bitten by any such dog or dogs and (2) to any person... by reason of such dog or dogs killing, wounding, injuring, worrying, or chasing any person or persons.
In Donner v. Plymate,[4] we reasoned that "the Legislature was fully aware of the need for protection from the intentional, deliberate, and purposeful acts of dogs and as a result restricted [§ 54-601] to those acts manifesting such qualities." As a result, we held that § 54-601 excluded strict liability for damages caused by "playful and mischievous acts of dogs."[5]
Underhill does not argue that our holding in Donner was incorrect. Rather, Underhill argues that 1992 Neb. Laws, L.B. 1011, abrogated our holding in Donner by adding the word "injuring" to the list of harms that could support liability. We agree with the general presumption that the Legislature, in adopting an amendment, intended to make some change in the existing law and that we should give effect to that change.[6] But the *789 legislative record does not support Underhill's interpretation of L.B. 1011.
Instead, the legislative record makes clear that L.B. 1011 was prompted by a court decision in which an injured person had been unable to recover for a broken hip that had allegedly been caused by a dog, because it was not a "wound" within the meaning of § 54-601.[7] The purpose of L.B. 1011 was to expand the scope of § 54-601 to include "internal damages even if there are no external damages caused by the owner's dog."[8] It did not address Donner, either implicitly or explicitly.
When we judicially construe a statute and that construction fails to evoke an amendment, we presume that the Legislature has acquiesced in our determination of its intent.[9] And we presume that when we have construed a statute and the same statute is substantially reenacted, the Legislature gave to the language the significance we previously accorded to it.[10] Nothing in the plain language of L.B. 1011, or its legislative history, rebuts the presumption that the Legislature acquiesced to our holding in Donner and reenacted § 54-601 without affecting that holding. We find no merit to Underhill's assignment of error.

CONCLUSION
Relying on our holding in Donner, the district court correctly granted summary judgment for Hobelman. The judgment of the district court is affirmed.
AFFIRMED.
WRIGHT, J., not participating.
McCORMACK, J., dissenting.
I respectfully dissent.
This appeal turns on our application of § 54-601, which was revised in 1992 and provides in relevant part that
the owner or owners of any dog or dogs shall be liable for any and all damages that may accrue (1) to any person... by reason of having been bitten by any such dog or dogs and (2) to any person ... by reason of such dog or dogs killing, wounding, injuring, worrying, or chasing any person or persons.
Prior to 1992, the word "injuring" was not in the statute. Given the current plain and unambiguous language of § 54-601, I would impose liability where a person was injured by a dog without regard to the intent of the dog at the moment of impact. Thus, in the instant case, I would reverse.
Donner v. Plymate,[1] upon which the district court relied, was decided in 1975 under the 1961 version of the statute, which did not include the word "injuring." At issue in Donner was whether the statute then in effect supported liability when a plaintiff was hurt by a dog that was simply being playful. In Donner, we noted that prior to passage of § 54-601 at common law, a plaintiff suing a dog owner for damage inflicted by a dog was required to prove that the dog owner had knowledge of the dangerous propensities of the dog.[2] *790 In other words, every dog was entitled to "`one free bite.'"[3] However, § 54-601 created a cause of action based upon strict liability on the part of a dog owner and we have consistently referred to § 54-601 as a strict liability statute.[4]
In Donner, we stated that the enactment of § 54-601 "removed the common law restriction of proving scienter or knowledge of the dangerous propensities of dogs, but only as it applied to the actions of dogs specified in the statute."[5] We then discussed the statutory terms then in effect, which created strict liability for damages inflicted by a dog that was biting, "killing, wounding, worrying, or chasing" a person or domestic animal.[6] We examined the definitions of those terms, each of which we determined implied an aggressive act by the dog. We therefore concluded that when the words which were then present in the statute were read together, they impliedly excluded playful and mischievous acts of dogs.[7]
The language upon which we based our holding in Donner and subsequent cases was amended by 1992 Neb. Laws, L.B. 1011. Evidently, the Legislature found § 54-601 wanting and expanded the scope of § 54-601 to include liability for a dog's "injuring" of a person or domestic animal. We are now asked to examine and apply the language of § 54-601 as it was revised in 1992 to the facts of this case, which facts the parties agree involve an injury to Hobelman by a dog not acting viciously.
As an initial matter, we note that to "injure" someone simply means to "do physical harm or damage."[8] Thus, unlike the language we relied upon in Donner, injure does not imply intent, aggression, or malice on the part of the dog. In fact, the word "injury" is commonly used in law to describe the physical consequences of an accident,[9] and the phrase "accidental injury" is regularly used and understood.[10]
We are aware that forms of the word "injuring" are used in other state statutes dealing with dogs harming humans. The courts in other states commonly conclude that where the word "injure" is included in the statute, strict liability is imposed without reference to the malice of the dog. In Boitz v. Preblich,[11] the court stated that "[t]he statutory language [injuries] does not indicate a limitation to vicious attacks" and that "injuries inflicted by a dog outside the scope of a vicious attack are not, as a matter of law, excluded from coverage under the statute."
In Donner, we reasoned that the actions listed in § 54-601 then in effect implied that our strict liability statute did not apply to playful or mischievous acts of dogs. Whatever may have been the merits of this court's reasoning in Donner, that reasoning *791 is not applicable to the amended language of § 54-601, the plain language of which permits recovery for accidental injuries.
As noted, at common law, a dog owner was liable if he or she knew of a dog's "vicious or mischievous propensities" and failed to protect others from injury.[12] Section 54-601 removed the common-law restriction of proving the owner's knowledge of the dog's propensities. Considering a similar development, the Florida Supreme Court observed in a dogbite case that "`the subject [Florida] statute modified the common law, in that it makes the dog owner the insurer against damage by his dog with certain exceptions'" and that the statute "`supersedes the common law, only in those situations covered by the statute.'"[13]
By the addition of "injuring," the current plain and unambiguous statutory language implies no distinction based upon whether the plaintiff's injury resulted from hostile or playful behavior on the part of the dog. The 1992 amendment to this strict liability statute added an additional situation which was covered by the statute and one which is not implicitly aggressive. Under § 54-601, liability will be imposed by reason of a dog injuring a person. As the court stated in Fifer v. Dix,[14] "it is not our role to create exceptions to the operation of a strict liability statute by `implication or statutory construction.'" As the court stated in Meunier v. Ogurek,[15] the liability of "dog owners depends on the terms of the statute, not on judge-made law." The current terms of § 54-601 do not require the court, or the trier of fact, to make the difficult evaluation of a dog's intent in inflicting injury,[16] although the trier of fact may be asked to decide whether the dog was provoked,[17] or whether the plaintiff was aware of the dog's propensities and assumed the risk of injury.[18] But those issues have not been presented in this appeal.
I conclude that the district court erred in entering summary judgment based upon this court's decision in Donner and not the plain language of the current version of § 54-601. And I would therefore reverse the judgment of the district court and remand the cause for further proceedings.
MILLER-LERMAN, J., joins in this dissent.
NOTES
[1] Erickson v. U-Haul Internat., 278 Neb. 18, 767 N.W.2d 765 (2009).
[2] Id.
[3] Metropolitan Comm. College Area v. City of Omaha, 277 Neb. 782, 765 N.W.2d 440 (2009).
[4] Donner v. Plymate, 193 Neb. 647, 649-50, 228 N.W.2d 612, 614 (1975).
[5] Id. at 650, 228 N.W.2d at 614. Accord Holden v. Schwer, 242 Neb. 389, 495 N.W.2d 269 (1993).
[6] See No Frills Supermarket v. Nebraska Liq. Control Comm., 246 Neb. 822, 523 N.W.2d 528 (1994).
[7] See, generally, Agriculture Committee Hearing, L.B. 1011, 92d Leg., 2d Sess. (Jan. 28, 1992).
[8] Introducer's Statement of Intent, L.B. 1011, Agriculture Committee, 92d Leg., 2d Sess. (Jan. 28, 1992).
[9] See Lagemann v. Nebraska Methodist Hosp., 277 Neb. 335, 762 N.W.2d 51 (2009).
[10] See Brown v. Kindred, 259 Neb. 95, 608 N.W.2d 577 (2000).
[1] Donner v. Plymate, 193 Neb. 647, 228 N.W.2d 612 (1975).
[2] See, e.g., Netusil v. Novak, 120 Neb. 751, 235 N.W. 335 (1931).
[3] See State v. Ruisi, 9 Neb.App. 435, 442, 616 N.W.2d 19, 26 (2000), disapproved on other grounds, State v. Decker, 261 Neb. 382, 622 N.W.2d 903 (2001).
[4] See, e.g., Kenney v. Barna, 215 Neb. 863, 341 N.W.2d 901 (1983); Paulsen v. Courtney, 202 Neb. 791, 277 N.W.2d 233 (1979).
[5] Donner v. Plymate, supra note 1, 193 Neb. at 649, 228 N.W.2d at 614.
[6] Id. at 650, 228 N.W.2d at 614.
[7] Id.
[8] Concise Oxford American Dictionary 460 (2006).
[9] See, e.g., Neb.Rev.Stat. §§ 48-101 and 48-151(4) (Reissue 2004).
[10] See, e.g., Busch v. Omaha Pub. Sch. Dist., 261 Neb. 484, 623 N.W.2d 672 (2001).
[11] Boitz v. Preblich, 405 N.W.2d 907, 910 (Minn.App.1987). See, similarly, Fifer v. Dix, 234 Wis.2d 117, 608 N.W.2d 740 (Wis.App. 2000); Meunier v. Ogurek, 140 Wis.2d 782, 412 N.W.2d 155 (Wis.App. 1987).
[12] Netusil v. Novak, supra note 2, 120 Neb. at 754, 235 N.W. at 337 (emphasis supplied).
[13] Donner v. Arkwright-Boston Manufacturers Mut., 358 So.2d 21, 24 (Fla.1978).
[14] Fifer v. Dix, supra note 11, 234 Wis.2d at 125, 608 N.W.2d at 744.
[15] Meunier v. Ogurek, supra note 11, 140 Wis.2d at 786, 412 N.W.2d at 156.
[16] Holden v. Schwer, 242 Neb. 389, 495 N.W.2d 269 (1993) (White, J., dissenting).
[17] Paulsen v. Courtney, supra note 4.
[18] See Corley v. Hubbard, 129 Neb. 38, 260 N.W. 551 (1935).