Nebraska Supreme Court Online Library
www.nebraska.gov/courts/epub/
01/15/2016 12:05 PM CST

Joleen Grammer and Terry Grammer,
appellants, v. Darren Lucking and
Cory Lucking, appellees.

___ N.W.2d ___

Filed January 15, 2016.    No. S-14-1080.

1. **Statutes: Judgments: Appeal and Error.** The meaning and interpretation of a statute are questions of law. An appellate court independently reviews questions of law decided by a lower court.
2. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.
3. **Words and Phrases.** The word "or," when used properly, is disjunctive.

Appeal from the District Court for Jefferson County: Paul W. Korslund, Judge. Reversed and remanded for further proceedings.

Rodney J. Rehm, of Rehm, Bennett & Moore, P.C., L.L.O., for appellants.

Susan K. Sapp and Shawn D. Renner, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., and, on brief, Robert M. Kinney-Walker, for appellees.

Heavican, C.J., Connolly, Miller-Lerman, Cassel, and Stacy, JJ.

Heavican, C.J.

## INTRODUCTION

This is a strict liability suit for damages sustained when two dogs belonging to Darren Lucking and Cory Lucking ran toward Joleen Grammer and Terry Grammer. The district court granted summary judgment in favor of the Luckings, and the Grammers appeal. We reverse, and remand for further proceedings.

## BACKGROUND

On July 16, 2013, the Grammers went for a walk that led them in the direction of the Luckings' home. Two of the Luckings' dogs were in the unfenced yard, without supervision. One dog was on a chain, and the other was unrestrained.

When the Grammers were fewer than 20 feet away from the Luckings' yard, the dogs ran in their direction, barking and growling. Terry stepped in front of Joleen and attempted to stop the dogs from approaching. The restrained dog reached the end of its chain, but the unrestrained dog ran past Terry and toward Joleen.

As Joleen backed away from the dogs, she stumbled and fell, hurting her elbow. Neither of the dogs ever bit, scratched, or otherwise touched the Grammers. After a few seconds, Darren came out of his house and called the dogs back inside.

The Grammers filed this action under Neb. Rev. Stat. § 54-601(1) (Reissue 2010), which imposes liability upon dog owners for damages caused by their dogs "killing, wounding, injuring, worrying, or chasing any person or persons." The Luckings moved for summary judgment. Reciting one of the three alternative definitions we have previously given to "chase," the district court stated that to survive the motion for summary judgment, "the evidence must show that the dogs were chasing Jole[en] in order to catch or harm her." The district court hypothesized no other facts that would defeat the motion, nor did it consider whether the dogs had

"injured" Joleen. The district court found that the Luckings' dogs did not intend to catch Joleen, and therefore granted summary judgment.

The Grammers appealed and filed a petition to bypass the Nebraska Court of Appeals, which we granted.

## ASSIGNMENTS OF ERROR

The Grammers argue, restated and reordered, (1) that our previous case law interpreting § 54-601 should be overturned. Additionally, the Grammers assign that the district court erred by (2) applying only one of the three definitions of "chase," (3) finding the dogs were not chasing the Grammers, (4) failing to consider whether the dogs injured Joleen, and (5) entering summary judgment for the Luckings.

## STANDARD OF REVIEW

[1] The meaning and interpretation of a statute are questions of law. An appellate court independently reviews questions of law decided by a lower court.[1]

[2] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[2]

## ANALYSIS

*Rule Exempting Playful or*
*Mischievous Acts.*

We do not reach the first assignment of error concerning the soundness of *Donner v. Plymate*[3] and its progeny. In *Donner*, we interpreted § 54-601 to preclude liability for damages

---

[1] See *DMK Biodiesel v. McCoy*, 290 Neb. 286, 859 N.W.2d 867 (2015).

[2] *Id.*

[3] *Donner v. Plymate*, 193 Neb. 647, 228 N.W.2d 612 (1975).

caused by a dog's playful or mischievous behavior.[4] We upheld this interpretation again in *Underhill v. Hobelman*.[5] Although the Grammers contend that the Luckings' dogs were not merely playful or mischievous, they alternatively argue that a 1992 amendment, adding "injuring" to § 54-601, abrogated our interpretation in *Donner*.[6]

The true issue in this appeal, though, is whether no reasonable juror could find that, as the Grammers alleged, the dogs "caused injury to . . . Joleen . . . by charging at and chasing her." In other words, we consider whether a reasonable mind could differ from the district court's findings and conclude that the dogs injured or chased the Grammers.[7] The district court did not reach the issue of whether the dogs were merely playful or mischievous; therefore, the integrity of *Donner* and *Underhill* are not dispositive of this appeal.

*District Court's Narrow Focus on
One Definition of "Chase."*

The Grammers' second through fifth assignments of error all relate to the district court's choice to apply only one definition of "chase" in its judgment. In *Donner*, we defined "chase" as "'to follow quickly or persistently in order to catch or harm' and 'to make run away; drive' or 'to go in pursuit.'"[8] We have not yet defined "injure" in the context of § 54-601. Generally, though, "injure" means "to inflict bodily hurt on [someone or something]."[9]

The district court, citing *Donner*, considered only whether the Luckings' dogs had "'follow[ed] quickly or persistently in

---

[4] *Id.*

[5] *Underhill v. Hobelman*, 279 Neb. 30, 776 N.W.2d 786 (2009).

[6] See 1992 Neb. Laws, L.B. 1011.

[7] See *Hughes v. School Dist. of Aurora*, 290 Neb. 47, 858 N.W.2d 590 (2015).

[8] *Donner, supra* note 3, 193 Neb. at 650, 228 N.W.2d at 614.

[9] Merriam-Webster's Collegiate Dictionary 601 (10th ed. 2001).

order to catch'" Joleen—the first of three definitions we have given to "chase."[10] We agree with the district court that the dogs did not follow Joleen in order to catch her. We note that this finding is separate from the *Donner* question of whether the dogs acted playfully or mischievously. According to the Grammers' testimony, the dogs ceased their approach after Joleen fell. Although there were only a few seconds from when Joleen fell until Darren called the dogs inside, this would have been enough time for the unrestrained dog to catch Joleen if that had been its intent. There is no indication the chained dog made any further attempts to approach Joleen.

[3] But the district court did not apply the alternative definitions of "chase," nor did it consider whether the dogs "injured" Jolene. The terms in § 54-601 are connected by "or." The word "or," when used properly, is disjunctive.[11] Further, each of the definitions of "chase" from *Donner* are also disjunctive. Thus, § 54-601 applies when a dog kills or wounds or injures or worries or chases a person, under any relevant definitions of those terms.

The district court rejected just one potential avenue by which the Grammers might recover, without considering the several statutory alternatives raised by the pleadings and the evidence. In effect, the district court applied the three definitions of "chase" conjunctively, requiring that a claimant prove each one in order to recover when chased by a dog. Instead, the district court should have considered each of the definitions of "chase," as well as "injure," disjunctively.

Therefore the Grammers' second through fifth assignments of error are correct to the extent that the district court should not have granted summary judgment without considering every relevant definition of "chase" and "injure."

_____

[10] See *Donner, supra* note 3, 193 Neb. at 650, 228 N.W.2d at 614.

[11] *Goodyear Tire & Rubber Co. v. State*, 275 Neb. 594, 748 N.W.2d 42 (2008).

## CONCLUSION

We reverse the summary judgment and remand the cause for further proceedings not inconsistent with this opinion.

Reversed and remanded for
further proceedings.

Wright and McCormack, JJ., not participating.

Miller-Lerman, J., concurring.

I concur in the result but write separately to note that I joined the dissent in *Underhill v. Hobelman*, 279 Neb. 30, 776 N.W.2d 786 (2009), and continue to believe that the reasoning in that dissent has merit. However, I agree with the majority in this case that the continued viability of *Donner v. Plymate*, 193 Neb. 647, 228 N.W.2d 612 (1975), after the 1992 amendment to § 54-601, is not dispositive of this appeal. I therefore concur in the majority's disposition of this appeal, and I agree that the summary judgment should be reversed and the cause remanded to the district court for further consideration of every relevant definition of "chase" and "injure."