

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-0841-24

### THE STATE OF TEXAS

#### v.

### COURTNEY JAMES-VARNELL ORGAN, Appellee

#### ON STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE FOURTEENTH COURT OF APPEALS WALLER COUNTY

**PARKER, J., filed a concurring opinion.**

I agree with the Court that the intrusion of a drug-detection dog's nose through an open window of a car is the sort of intrusion that *could* implicate the protections of the Fourth Amendment. But I think it is premature to discount the fact that a dog is a living creature that can have a will of its own. Because I think there is a substantial argument that a single, unexpected intrusion by a dog would not trigger Fourth Amendment protections, I would leave resolution of that question for another day. In this case, the dog intruded into the car window *three* times. After the first intrusion, the officers should have acted to restrain the dog.

The Court notes that there are cases that say that the Fourth Amendment is not implicated

by an instinctual action of a drug dog, but it says that those cases predate, or fail to account for, *Jardines*[1] or *Jones*.[2] But more recent cases that account for *Jardines* and *Jones* have in fact suggested that a dog's intrusion into a vehicle does not implicate the Fourth Amendment if it is instinctual[3] or *de minimis*.[4] And the theory behind the "instinctual dog" holding arguably distinguishes the situation from both *Jones* and *Jardines* even under a common-law-based property-rights analysis. A drug dog is a tool of law enforcement, but it is not a machine. A dog is not AI.[5] If an AI program acts in an unexpected way, responsibility can nevertheless be traced to the fact that a human set up the parameters of the program. A dog can be trained to act in precise ways, but a dog is still an animal, and as such, it can behave in an unexpected manner completely apart from its training.

---

[1] *Florida v. Jardines*, 569 U.S. 1 (2013).

[2] *United States v. Jones*, 565 U.S. 400 (2012).

[3] *United States v. Keller*, 123 F.4th 264, 268 (5th Cir. 2024) ("Numerous circuits agree that, absent police misconduct, the instinctive actions of a trained canine—including placing his paws on a vehicle's exterior—constitute incidental contact, not an unconstitutional Fourth Amendment search."); *State v. Miller*, 367 N.C. 702, 708, 712-13 (2014) (concluding that, even under *Jones* and *Jardines*, "If a police dog is acting without assistance, facilitation, or other intentional action by its handler (in the words of *Sharp*, acting 'instinctively'), it cannot be said that a State or governmental actor intends to do anything. In such a case, the dog is simply being a dog.") (discussing *Jardines*, *Jones*, and *United States v. Sharp*, 689 F.3d 616 (6th Cir. 2012), and other cases).

[4] *State v. Mumford*, 14 N.W.3d 346, 353 (Iowa 2024) ("The drug dog's fleeting touch of the passenger door and *de minimis* intrusion into the vehicle cabin through a window left open by a passenger does not justify the exclusion of evidence under the Supreme Court's Fourth Amendment jurisprudence.").

[5] Artificial intelligence.

Like the common-law "dog gets one free bite" rule,[6] does a dog get "one free intrusive sniff"? Or even "one free intrusive sniff per incident" on the theory that the dog can be retrained after a mistake? Those are interesting questions that can be addressed in a case with the appropriate facts. And if a dog is inadequately trained, or officers encourage the dog's intrusion, or officers manipulate circumstances to cause a dog to intrude on its own, then even a single intrusion by a dog would implicate the Fourth Amendment. Conversely, a defendant ought to forfeit Fourth Amendment protections if he purposefully created a situation designed to encourage a dog to intrude into his vehicle. How do we treat a situation that *might* have been designed by a drug courier to encourage aberrant behavior by a dog but cannot be proven to be such? With drug operations sometimes run by sophisticated cartels, we should be cautious about fashioning a blanket rule that could hand drug couriers a tool to thwart legitimate prosecutions.

This discussion illustrates why we should act cautiously with a narrow holding. We can still institute two bright-line rules in this case. The first would be the Court's rule, but I would use it for the more limited purpose of determining when the conduct of a dog is sufficient to show an "intrusion" that triggers further analysis: that any intrusion into the interior of the vehicle by a dog is an "intrusion" that constitutes a search if the handler can fairly be held responsible for the intrusion. The second bright-line rule addresses one situation—though not necessarily the only one—in which a handler could fairly be held responsible for a dog's intrusion: that more than one

---

[6] *See Reich v. Sea Sprite Boat Co.*, 50 F.3d 413, 416 (7th Cir. 1995); *Inmates of Occoquan v. Barry*, 844 F.2d 828, 852 n.30 (D.C. Cir. 1988); *Belcher Yacht, Inc. v. Stickney*, 450 So. 2d 1111, 1113 (Fla. 1984); *Cook v. Whitsell-Sherman*, 796 N.E.2d 271, 276 (Ind. 2003); *Maupin v. Tankersley*, 540 S.W.3d 357, 362 n.3 (Ky. 2018); *Underhill v. Hobelman*, 279 Neb. 30, 35 (2009); Beckett *v. Warren*, 921 N.E.2d 624, 628 (Ohio 2010); *Harris v. Anderson County Sheriff's Office*, 381 S.C. 357, 360-61 (2009).

intrusion by the dog in the same encounter implicates the Fourth Amendment.

With these comments, I concur in the Court's judgment.

Filed: October 30, 2025

Publish